Donna L. TURNER, Plaintiff,

v.

RANDOLPH COUNTY, NORTH CAR-
OLINA, Billy T. McDaniel, Terry Pope,
Hal Scott, Jr., Hal Scott, Sr., and William F. Willis, Defendants.

No. 2:94CV00643.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Dec. 11, 1995.

Stephen S. Schmidly & Andrew K. McVey, of Moser, Schmidly, Mason & Roose, Asheboro, North Carolina, for plaintiff.

Robert S. Pierce of Womble, Carlyle, Sandridge & Rice, Winston–Salem, N.C., Alan V. Paugh of Gavin, Cox, Pugh, Gavin & Gavin, Asheboro, N.C., for defendant.

## *MEMORANDUM OPINION AND ORDER*

HIRAM H. WARD, Senior District Judge.

This matter comes before the Court on defendants' Motion to Dismiss pursuant to Rule 12(b)(6). For the reasons stated herein, the Motion will be granted with respect to the fourth claim for conspiracy in violation of 42 U.S.C. § 1985(3) and will be denied for the other claims.

### FACTS

Plaintiff was employed by defendant Randolph County as a Building Codes Enforcement Officer from January 1989 until October 1994. Plaintiff was supervised by defendant Billy T. McDaniel and defendant Terry Pope. Mr. McDaniel was the County Building Codes Administrator and Mr. Pope was appointed by Mr. McDaniel to supervise the operation of the County Inspections Department's Archdale office.

During 1993 and 1994, plaintiff complained that Mr. McDaniel and Mr. Pope were acting in a manner to make plaintiff's work environment sexually hostile. Plaintiff complained to Mr. McDaniel, Mr. Pope and defendant Hal Scott, Sr. (then Acting Personnel Director for Randolph County). Plaintiff alleged that Randolph County and its employees did nothing to remedy the situation.

Plaintiff contends that after complaining of the sexual harassment, Mr. McDaniel retaliated by giving plaintiff the only adverse job performance evaluation that she ever received. Mr. Scott Sr. investigated plaintiff's complaints and submitted a report finding no harassment. Based on this report, Mr. Wil-

lis, Randolph County Manager, determined that the sexual harassment complaints were unsubstantiated.

Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission. After the filing of her EEOC charge, plaintiff was issued an oral warning by Mr. McDaniel at a meeting presided over by the new Randolph County Personnel Director, Hal Scott Jr. This oral warning was allegedly based on citizen complaints and code misinterpretation. When plaintiff inquired into the reason for the warning she was allegedly told that her attitude had changed.

One month after receiving the oral warning, plaintiff received a written warning and was suspended for reasons not related to those stated in the oral warning. Plaintiff filed this action on November 1, 1994 alleging 1) hostile work environment in violation of 42 U.S.C. § 2000 et seq.; 2) retaliation in violation of 42 U.S.C. § 2000 et seq.; 3) violation of 42 U.S.C. § 1983; 4) Conspiracy pursuant to 42 U.S.C. § 1985(3); 5) negligent infliction of emotional distress and in the alternative 6) intentional infliction of emotional distress.

Defendants filed a Motion to Dismiss the first and second claims with respect to the individual defendants, the fourth claim with respect to all defendants, and the fifth and sixth claims for failure to plead waiver of sovereign immunity.

Plaintiff successfully amended her complaint on May 23, 1995 and in her amended complaint alleged that defendants waived their sovereign immunity as a result of the purchase of insurance.

**DISCUSSION**

■ Defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion should only be granted in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). The Fourth Circuit has stated that "a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under

any state of facts which could be proved in support of his claim." *Id.*

■ Based on *Rogers*, the question becomes whether the Complaint, taken in the light most favorable to plaintiff, states any valid claim for relief. In deciding whether a claim has been stated, Rule 8 of the Federal Rules of Civil Procedure requires only "notice pleading" such that a defendant receives fair notice from the complaint of the claim and the grounds on which the claim rests. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**INDIVIDUAL LIABILITY UNDER
42 U.S.C. § 2000e(b)**

■ Defendants first argue that there is no individual liability under 42 U.S.C. § 2000e(b) and therefore the individually named defendants should have the § 2000e(b) claims dismissed against them. 42 U.S.C. § 2000e–2 makes it unlawful for an employer to discriminate against an individual because of such individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e(b) defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ..., and any agent of such a person ..." There appears to be no question that the named defendants in this action were agents of Randolph County. However, there is a question as to whether the named defendants fall within the category of "employer" such that they can be held to be individually liable.

This issue was initially addressed by the Fourth Circuit in 1989. At that time, it was held that an individual qualifies as an "employer" if "he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (1989) *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990) (*en banc*). In support of its decisions, the *Paroline* court relied on decisions from several circuits. However, many of the decisions relied upon in *Paroline* have been severely limited or reversed.

The *Paroline* court cited *Tafoya v. Adams*, 612 F.Supp. 1097, 1104 (D.Colo.1985), aff'd,

816 F.2d 555 (10th Cir.); cert. denied, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987) as one of several cases to support the theory of individual liability under Title VII. Several years after *Tafoya* was decided, the 10th Circuit reversed itself and held that "Title VII is against the employer, not individual employees whose action would constitute a violation of the Act". *Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir.1993). The *Sauers* court held that supervisory employees could be named in their official capacity as agents of the employer, but the individual could not be held personally liable. *Sauers* at 1125.

The *Paroline* court also cited *Hamilton v. Rodgers*, 791 F.2d 439, 442 (5th Cir.1986). However, in *Harvey v. Blake*, 913 F.2d 226 (5th Cir.1990), the *Hamilton* opinion was limited by the 5th Circuit when it was held that an employee can only be held liable in their official capacity and not in their individual capacity. *Harvey* at 227–228.

While somewhat unclear, it appears that the *Paroline* court also relied upon *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987) for the proposition that an agent can be liable for any actionable sexual harassment in which he personally participated. Like the 10th and 5th circuits, the 11th Circuit has expressly held that "[i]ndividual capacity suits under Title VII are ... inappropriate. The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act". *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991).

The *Paroline* court also relied upon dicta from *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir.1982) in which the court noted that an agent can be sued in his official capacity. Although cited in the *Paroline* opinion, the *York* court did not hold that an agent could be personally liable for a violation of Title VII. As has been discussed, many circuits have addressed the issue of individual liability under Title VII and the majority interpret the term "employer" to exclude individual supervisors. *See Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583 (9th Cir.1993) *cert. denied* — U.S. ——,

114 S.Ct. 1049, 127 L.Ed.2d 372; *Busby; Harvey;* and *Sauers.*

Only one case relied upon by the *Paroline* court to support its decision remains good law. In *Duva v. Bridgeport Textron*, 632 F.Supp. 880 (E.D.Pa.1985), the District Court held that supervisory employees are agents of employers and may be proper defendants under Title VII. *Duva* at 882. The issue of individual employee liability has still not been addressed by the 3rd Circuit.

There also appears to be some disagreement within the Fourth Circuit over the interpretation of the statutory definition of "employer" found in 42 U.S.C. § 2000(e)b. 29 U.S.C. § 630(b) uses the same definition of "employer" as used in 42 U.S.C. § 2000e(b). However, in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994), it was held that civil liability was limited to the employer and that an employee could not be held liable. *Birkbeck* at 511. The *Birkbeck* court apparently realized that this interpretation of "employer" was contrary to that determined in *Paroline,* so the *Birkbeck* court attempted to distinguish its holding. In a footnote, the *Birkbeck* stated that "an employee, however may not be shielded as an employer's agent in all circumstances. We address here only personnel decisions of a plainly delegable character". *Birkbeck* at 510. This distinction appears to be rather narrow when viewed in light of the reasoning applied in *Birkbeck.* The *Birkbeck* definition of "employer" is diametrically opposed to the *Paroline* definition.

As shown by the careful distinction employed by the *Birkbeck* court, there appears to be some conflict within the Fourth Circuit over the proper interpretation of the term "employer" as used in Title VII. The weight of recent authority supports defining "employer" in a manner in which individual defendants are not held liable in their individual capacities. However, this court is bound to apply the current law as established by the Fourth Circuit. This may be the case for the Fourth Circuit to reconcile the discrepancy between the *Birkbeck* and *Paroline* definitions of "employer". Applying the law as established by *Paroline,* the individual defendants can be held individually and personally

liable for violation of 42 U.S.C. § 2000 *et seq.* Therefore, defendants' Motion to Dismiss claims one and two with respect to the individually named defendants is denied.

## CONSPIRACY CLAIM

■ Defendants' argument is that plaintiff failed to state a claim for conspiracy under 42 U.S.C. § 1985(3). Defendants contend that plaintiff has only alleged that the named defendants conspired with one another to discriminate against plaintiff and conspired with one another to hide their discrimination.

■ In the Fourth Circuit, the intracorporate conspiracy doctrine has been applied to § 1983 civil rights cases. *Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985). It is black letter law that in order to state a claim for conspiracy, it must be alleged that two or more persons or entities were involved. *Id.* at 1251. As a general rule, the acts of a corporate agent are deemed to be the acts of the corporation. *Id.* Since a conspiracy requires two entities, logic dictates that it is impossible for a corporation to conspire with itself. Therefore, defendants contend that plaintiff has failed to state a claim for conspiracy since all of the named defendants are agents of Randolph County and it is not possible for Randolph County to conspire with itself.

Plaintiff makes two arguments to counter defendants' contention. Plaintiff first argues that there is an exception to the intracorporate conspiracy where the corporate agent had an "independent personal stake" in achieving the corporation's alleged objective. *Greenville Publishing Co., Inc. v. Daily Reflector, Inc.,* 496 F.2d 391 (4th Cir.1974). Plaintiff argues that Mr. McDaniel and Mr. Pope concealed their alleged sexual harassment in an effort to remain employed by Randolph County. Plaintiff contends that this effort to remain employed by Randolph County constituted an "independent personal stake" and as such falls within the exception created in *Greenville Publishing.*

The personal stake exception was not initially defined in a careful manner which resulted in criticism that the exception threatened to swallow the rule. *Oksanen v. Page Memorial Hosp.,* 945 F.2d 696 (4th Cir.1991) *cert. denied* 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 137. In an effort to limit the scope of this exception, the *Oksanen* court limited the "personal stake exception" to the express rationale underlying the *Greenville* decision. *Id.* at 705. Specifically, the *Oksanen* court held that the personal stake exception required that there be a personal *financial* stake involved. This limitation has also been applied in an unpublished opinion where the court specifically refused to expand the personal stake exception to include bad faith and personal motives. *Locus v. Fayetteville State University,* 1989 WL 21442 (4th Cir. 1989).

■ Thus, in order for plaintiff to rely on the "personal stake exception" to overcome the intracorporate conspiracy doctrine, plaintiff must allege that the individual defendants had some financial stake in achieving the corporation's alleged objective. Plaintiff attempts to allege that Mr. McDaniel and Mr. Pope had financial stakes in concealing the alleged harassment in an effort to maintain their jobs. This is not the type of financial interest that was addressed in *Greenville.* In *Greenville,* two newspapers were competing and a defendant officer had a monetary interest in one of the newspapers involved in the suit and therefore stood to benefit personally from the elimination of the other newspaper. *Greenville Publishing* at 400. In this action, plaintiff has not alleged any financial stake of the type exemplified by *Greenville.* As a result, plaintiff has not alleged any "personal financial stake" and the intracorporate conspiracy doctrine remains. Accordingly, the named defendants, all corporate agents, could not have conspired with each other or Randolph County.

Plaintiff's second argument to overcome the intracorporate conspiracy doctrine is that the conspiracy claim should not be dismissed prior to discovery since it may turn out that there were some individuals involved in the alleged conspiracy who were not corporate agents. This vague conspiracy allegation is insufficient to state a claim. Plaintiff must at least allege the parties involved in any conspiracy. As discussed above, these individually named defendants could not conspire

with themselves due to the intracorporate conspiracy doctrine. Thus, the only way plaintiff's conspiracy claim can survive is if plaintiff has alleged a conspiracy between Randolph County agents and outside parties.

In the complaint, plaintiff alleges that Mr. McDaniel and/or Mr. Scott solicited assistance from Mr. William Boyd in order to procure written complaints about plaintiff's work performance. Plaintiff does not allege that Mr. Boyd was involved in any conspiracy with any of the named defendants. Indeed, from the complaint, it does not appear that Mr. Boyd did anything other than provide information requested by Randolph County employees. Plaintiff must have realized this since, in her fourth claim for relief for conspiracy, she only alleges that defendants Scott Jr., Scott Sr., Willis, Pope and McDaniel conspired to deprive plaintiff of equal protection and does not mention Mr. Boyd. Other than the actions taken by Mr. Boyd, plaintiff has not alleged any actions that could be construed as conspiracy. Since plaintiff did not allege any conspiracy except between Randolph County employees, plaintiff's claim for conspiracy must be dismissed.

## GOVERNMENTAL IMMUNITY

▇ Defendants finally move to dismiss plaintiff's state law claims because plaintiff failed to plead that defendants had waived their governmental immunity. A governmental entity is entitled to governmental immunity from torts committed by employees or agents while performing their governmental functions. *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 171 S.E.2d 427 (1970). However, governmental immunity can be waived under certain circumstances. Specifically, N.C.Gen.Stat. § 153A–435(a) provides that a county may contract to insure itself and thereby waive its immunity to the extent of the coverage. However in order to state a claim relying on this waiver of immunity, a plaintiff must allege in the complaint that the governmental immunity has been waived through the purchase of insurance. *Gunter v. Anders*, 114 N.C.App. 61, 441 S.E.2d 167, *on rehearing*, 115 N.C.App. 331, 444 S.E.2d 685 (1994).

Plaintiff initially failed to allege that Randolph County had waived its governmental immunity by purchasing insurance; but on May 23, 1995, plaintiff amended the complaint and alleged the purchase of insurance. This amendment was not opposed by defendants. Since plaintiff has pled that Randolph County purchased insurance, plaintiff has pled sufficient facts to allege the waiver of governmental immunity. Accordingly, defendants' Motion to Dismiss the state law claims for failure to allege waiver of governmental immunity will be denied.

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss claims one and two with respect to the individually named defendants be and the same hereby is, **DENIED,** that defendants' Motion to Dismiss the fourth claim for violation of 42 U.S.C. § 1985 be, and the same hereby is, **GRANTED,** and that defendants' Motion to Dismiss plaintiff's fifth and sixth claims for violation of state law claims based on governmental immunity be, and the same hereby is, **DENIED.**