**STATIC CONTROL COMPONENTS, INC., Plaintiff,**

**v.**

**DARKPRINT IMAGING, INC., Defendant.**

No. 1:99CV00612.

United States District Court, M.D. North Carolina.

Feb. 9, 2001.

William L. London, III, Sanford, NC, for plaintiff.

Douglas W. Kenyon, Matthew Patrick McGuire, Hunton & Williams, Raleigh, NC, Timothy P. Getzoff Donald A. Degnan, Holland & Hart, LLP, Boulder, CO, for Defendant.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This matter is before the Court on Defendant's Motions to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in the alternative, on Defendant's Motion for a More Definite Statement under Rule 12(e). [Doc. ## 6, 15.] For the reasons stated below, the Defendant's motions are DENIED IN PART and GRANTED IN PART.

### I.

### A.

The facts of this case, stated in the light most favorable to the Plaintiffs, are as follows. Plaintiff, Static Control Components, Inc., is a North Carolina corporation which distributes, among other things, replacement toner and component parts for laser printers. Plaintiff alleges Defendant, Darkprint Imaging, Inc., in an attempt to enter the toner business, gained an unfair business advantage by hiring away Plaintiff's employees who possessed intimate knowledge of Plaintiff's trade secrets.

In the spring of 1996, Plaintiff alleges that Defendant hired Tommy Daniels and Gary Shute, two of its former employees whose expertise included, respectively, product development and technical assistance. In September 1996, Defendant allegedly hired another former employee, Lauren Hulse, who had worked as a toner scientist for Plaintiff in the development of formulations used for printer models. Mr. Hulse had signed a confidentiality and non-compete agreement with Plaintiff containing the following language:

> I [Lauren Hulse] agree to treat all of this information regarding these [Plaintiff's] products as the property of Static Control Components, Inc. I agree not to reveal any data regarding these products to any business enterprise or individual without the written permission of Static Control Components, Inc.

> In the event I [Lauren Hulse] terminate my consultation association with Static Control Components, Inc., I agree not to compete directly or indirectly with Static Control Components, Inc. in its manufacturing and/or distribution of supplies to remanufacturers of laser printer cartridges for a period of two (2) years from the date of last compensation from Static Control Components, Inc.[1]

Defendant allegedly hired two more of Plaintiff's employees, Heather Marino in 1997 and Leonard Gunter in 1998, both of

---

1. Ex. A, Def.'s Br. Supp. Mot. Dismiss. Ex. A was provided by Defendant in its brief in support of a motion to dismiss. Plaintiffs have not contested the validity of Ex. A as the noncompete and nondisclosure agreement in dispute in the case.

whom had experience in Plaintiff's sales department.

Overall, Plaintiff argues that Defendant hired these five employees, with distinct areas of expertise, in order to obtain access to confidential, specialized knowledge, which Plaintiff had in the toner business. This knowledge allegedly included development of toner to remanufacturer specifications, customer support and technical assistance, and specialized customer preferences. Further, it is alleged that the Defendant hired these individuals only to gain such confidential information, evidenced by the fact that "many" of the previously mentioned employees held only brief tenures in Defendant's employment. Plaintiff claims it was unaware of the full extent of the Defendant's efforts to obtain confidential information until "the past year." [2]

Three of Plaintiff's four claims relate to the hiring of former employees: First, Plaintiff alleges that Defendant misappropriated and misused Plaintiff's trade secrets and confidential information, the "specialized knowledge" previously discussed, in violation of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66–152 to –157 (1992). Second, Plaintiff alleges that Defendant tortiously interfered with a confidentiality and non-compete agreement with Mr. Hulse. Third, Plaintiff alleges that Defendant's actions amounted to unfair and deceptive trade practices in violation of the Unfair Trade Practices Act, N.C. Gen.Stat. § 75–1.1 (1994). Overall, Plaintiff's prayer for relief includes a request for damages and that Defendant be permanently enjoined from misappropriating, copying, using, or disclosing Plaintiff's trade secrets.

Defendant seeks to dismiss all three claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative, Defendant seeks to require Plaintiff to provide a more definite statement of these claims pursuant to Rule 12(e).

### B.

Plaintiff's Fourth Claim for Relief involves an alleged dispute between Plaintiff and Defendant, regarding circumstances apart from those previously described. Both Plaintiff and Defendant are in the business of selling mag rollers, a component part of a laser printer cartridge. At the heart of the potential dispute, Plaintiff advertised on January 5, 2000, that certain printer "bearings" wear down "more rapidly when used with a mag roller sleeve that is textured from end to end," potentially causing a printer "defect." [Ex. A, Am. Comp.] Defendant's mag rollers are so textured at the ends. On the other hand, Plaintiff's mag rollers are smooth at each end; thus Plaintiff believes its rollers are not susceptible to this defect.

In response to Plaintiff's advertisement, Defendant's attorney sent a letter to Plaintiff stating that Defendant is aware of Plaintiff's "defect" allegations and demanded that Plaintiff provide its evidentiary basis for the assertion. Defendant noted, "[w]e believe this assertion to be false and, as such, gives rise to claims for false advertising under Section 43(a)(1)(B) of the Lanham act, product disparagement, trade libel, tortious interference with prospective and existing contractual relations, and other claims." [Ex. B, Am. Comp.] Defendant's attorney concluded that if he did not receive sufficient response within ten days, Defendant would "consider its legal op-

**2.** While Defendant alludes to a statute of limitations argument, this argument has not been adequately raised in the pleadings nor sufficiently briefed and will not be considered here.

tions." [*Id.*] Plaintiff claims to have a real and reasonable apprehension of being sued and is concerned that Defendant will also bring lawsuits based on other mag roller advertisements.

In this light, Plaintiff requests that the Court declare that none of Plaintiff's advertisement and communication with customers or prospective customers, regarding "mag rollers," violate the Lanham Act, constitute product disparagement, trade libel, tortious interference with perspective and existing contractual relation, or give rise to any other claims by Defendant.

Defendant moves to dismiss Plaintiff's fourth claim pursuant to Rule 12(b)(1) on grounds that this Court lacks jurisdiction over the subject matter.

## II.

Defendant moves to dismiss Plaintiff's first claim for relief, by Rule 12(b)(6), on grounds that Plaintiff has failed to state a claim of misappropriation and misuse of trade secrets upon which relief can be granted.

■ Fed. R Civ. P. 8(a)(2) provides that a complaint need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." [3] *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); [4] *see Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) (finding that a complaint need not allege "any" facts). Whether a complaint satisfies Rule 8(a)(2), is to be determined by whether the pleadings provide fair notice to the opposing party. *See Conley*, 355 U.S. at 47, 78 S.Ct. at 103; *Turner v. Randolph County, N.C.*, 912 F.Supp. 182, 184 (M.D.N.C.1995). Furthermore, a claim will not be dismissed unless it appears certain that a Plaintiff can prove no set of facts which would entitle it to relief. *See Conley*, 355 U.S. at 45–46, 78 S.Ct. at 103; *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

The North Carolina Trade Secrets Protection Act provides:

Misappropriation of a trade secret is prima facie established by the introduction of substantial evidence that the person against whom relief is sought both: (1) Knows or should have known of the trade secret; and (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.

N.C.G.S. § 66–155. *See North Carolina Elec. Membership, Corp. v. North Carolina Dep't of Econ. and Cmty. Dev.*, 108 N.C.App. 711, 718–19, 425 S.E.2d 440, 445 (1993) (describing (1) and (2) as the "elements" for an action for misappropriation).

The Act defines "trade secrets" and "misappropriation" as follows:

---

[3]. Unlike its predecessor, the Federal Rules of Equity, the Federal Rules of Civil Procedure make no mention of any "fact" pleading requirement. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1218, at 180 (2d ed.1990) (noting that Fed. R.Civ.P. Form 9 illustrates a negligence complaint with conclusory language; defendant "negligently drove a motor vehicle against plaintiff").

[4]. The Supreme Court recognizes that Federal Rule of Civil Procedure 9(b) requires particularity when alleging fraud or mistake. *See Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160.

(1) 'Misappropriation' means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained by another person with a right to disclose the trade secret.

[Section (2) omitted]

(3) 'Trade Secret' means business or technical information, including, but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66–152.

■ In the complaint [¶ 15], Plaintiff claims to hold a trade secret in "specialized knowledge" regarding

a. development of toner especially for the remanufacturing process, which requires identifying and working with different manufacturers of toner to create a particular toner which works well with the components used by remanufacturers;

b. customer support and technical assistance to remanufacturers working with a wide variety of laser printer cartridges, to address problems faced by remanufacturers;

c. maintenance of a dedicated sales force with knowledge of specialized customer preferences and requirements in order to build customers' trust in existing products and new products extensions.

Defendant responds that Plaintiff has merely pled "concepts," which cannot be accorded trade secret status. While it is unclear what fully constitutes "development of toner," "customer technical assistance," or "customer preferences," this Court cannot say, with certainty, Plaintiff can prove no set of facts which would entitle such "specialized knowledge" the trade secret status.[5]

Plaintiff does allege that such specialized knowledge provides "independent commercial value not being generally known or readily ascertainable to competitors." [Comp. ¶ 25.] Plaintiff also alleges that it has "at all times taken reasonable and appropriate steps to maintain the secrecy and confidentiality of its trade secrets." [Comp. ¶ 35.] At least one employee, Mr. Hulse, signed a confidentiality agreement with Plaintiff, pledging "not to reveal any data regarding [Plaintiff's] products to any business enterprise or individual without the written permission of [Plaintiff]." [Ex.

---

**5.** For example, specialized knowledge in "development of toner" may include specialized knowledge in formulas, codes, or unique production devices, which courts have found to be trade secrets. *See Barr–Mullin, Inc. v. Browning*, 108 N.C.App. 590, 595, 424 S.E.2d 226, 229 (1993) (finding computer software a trade secret when distributed in code form); *Moore v. American Barmag Corp.*, 710 F.Supp. 1050, 1059–60 (W.D.N.C.1989) (finding Plaintiff's device, for feeding yarn in manufacturing, to be a trade secret). Similarly, courts

have recognized that different types of "customer preferences" can amount to trade secrets. *See Electric Membership Corp.*, 108 N.C.App. at 718, 425 S.E.2d at 444 (finding party likely to show that a trade secret existed where company documents contained projections of sales rates and pricing methodologies); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C.App. 169, 173–74, 423 S.E.2d 324, 327 (1992) (concluding that customer lists and pricing and bidding formulas were trade secrets).

A, Def.'s Br. Supp. Mot. Dismiss, referenced Comp. ¶ 25.] *See Merck & Co., Inc. v. Lyon*, 941 F.Supp. 1443, 1457 (M.D.N.C. 1996) (finding trade secret information to exist where confidentiality agreements were in place, although no non-compete covenant was in effect). Overall, for purposes of Rule 8(a) Plaintiff has sufficiently alleged the existence of a trade secret.

■ Similarly, Plaintiff has sufficiently pled an action of misappropriation. Plaintiff alleges, on information and belief,[6] that Defendant transformed its business by wilfully hiring away five of Plaintiff's employees who had obtained confidential information about various phases of Plaintiff's toner business. Furthermore, on the pleadings, it does not appear that Plaintiff consented to any release of trade secrets. In this regard, Plaintiff has sufficiently alleged that Defendant knew of the trade secret and acquired the trade secret without consent of the Plaintiff.

In conclusion, on the pleadings in this case, it appears that Plaintiffs could prove a set of facts entitling it to relief. Thus, Defendants motion to dismiss Plaintiff's first claim of relief for misappropriation and misuse of trade secrets is denied.

### III.

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's second claim for relief on grounds that Plaintiff has failed to state a claim of tortious interference with contract upon which relief can be granted.

■ To establish a claim for tortious interference with contract in North Carolina, plaintiff must prove the following elements: (1) that a valid contract existed between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) that the defendant knew of the contract; (3) that the defendant intentionally induced the third person not to perform the contract; (4) and in doing so, acts without justification; (5) resulting in actual damage to the plaintiff. *See Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (presenting elements).

■ Whether or not Federal notice pleading requires a plaintiff to state all elements of a claim in the complaint, it was done here: Plaintiff alleges that Defendant knew or reasonably should have known that Plaintiff had entered valid noncompete and confidentiality agreements with Mr. Hulse; Defendant, without justification, intentionally induced Mr. Hulse to breach both agreements, and as a result, Plaintiff allegedly suffered damages in excess of $75,000. [Comp. ¶¶ 40–44.]

### A.

Considering the noncompete provision, Defendant disputes whether the first ele-

---

**6.** As Wright and Miller provide, "permitting allegations on information and belief is a practical necessity. How else can a pleader avoid the appearance of perjury when he is without direct personal knowledge regarding ... allegations to his claim and must plead on less certain footing? Pleading on information and belief is a desirable and necessary expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of plaintiff but he has sufficient data to justify interposing an allegation on the subject." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 206 (2d ed.1990); *See Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 73, n. 8 (1st Cir.2000); *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1372 (10th Cir. 1979) (concluding that pleading on information and belief "fits well with the spirit of the rules"); *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404, 406 (7th Cir.1945) (finding such pleadings permissible where matters are peculiarly within the knowledge of the defendants).

ment of the tortious interference with contract claim, a valid noncompete covenant, actually existed.[7]

█ As the North Carolina Court of Appeals stated in *Hartman v. W.H. Odell and Assoc., Inc.,* to be enforceable, a noncompete covenant must be "reasonable as to time and territory." 117 N.C.App. 307, 311, 450 S.E.2d 912, 916 (1994). This reasonableness is a matter of law for the court to decide. *See id.* (quoting *Beasley v. Banks,* 90 N.C.App. 458, 460, 368 S.E.2d 885, 886 (1988)). If the territory proscribed in a noncompete covenant is overly broad, "the entire covenant fails since equity will neither enforce nor reform an overreaching and unreasonable covenant." *Id.* (quoting *Beasley,* 90 N.C.App. at 460, 368 S.E.2d at 886).

A nationwide or worldwide restrictive covenant is not, per se, invalid as a matter of law. *See Harwell Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E.2d 316 (finding the "allegations in the complaint as to business activities throughout the United States support the reasonableness of the [nationwide] restriction"); *Broadway & Seymour, Inc. v. Wyatt,* No. 91–2345, 1991 WL 179084, at *5–6 (4th Cir. Sept. 13, 1991) (noting North Carolina courts may uphold national territory restrictions when a plaintiff company does business nationwide). Furthermore, the North Carolina Court of Appeals has held a noncompete agreement to be reasonable where no geographical restriction existed on the face of the agreement. *See Market Am., Inc. v. Christman–Orth,* 135 N.C.App. 143, 520 S.E.2d 570 (1999).

█ For purposes of the Rule 12(b)(6) motion to dismiss, the determinative question is whether it appears certain that Plaintiff can prove no set of facts which would establish the reasonableness of the disputed noncompete covenant. This analysis is guided by six relevant factors courts use to determine if a covenant is broader than necessary to protect a business:

(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Hartman,* 117 N.C.App. at 312, 450 S.E.2d at 917.

The pleadings reveal that on February 18, 1993, Mr. Hulse entered a noncompete covenant with Static Control containing the following pertinent language:

In the event I terminate my consultation association with Static Control Components, Inc., I agree not to compete directly or indirectly with Static Control Components, Inc. in its manufacturing and/or distribution of supplies to remanufacturers of laser printer cartridges for a period of two (2) years from the date of last compensation from Static Control Components, Inc.

[Ex. A, Def.'s Br. Supp. Mot. Dismiss]. As the language displays, there is no physical territorial restriction in the agreement. Language, limiting the scope of the prohibition, is found when the covenant prohibits competition in "manufacturing and/or distribution of supplies to remanufacturers of laser printer cartridges." *Id.*

█ At this stage in the proceedings, the Court is unable to determine the rea-

---

7. The Defendant has chosen to focus on whether a valid noncompete agreement existed. Thus this Court will similarly focus its attention on element (1) when considering both the noncompete and nondisclosure provisions.

sonableness of this covenant language. The failure to provide a geographical restriction on the face of the agreement does not, per se, invalidate the covenant. Furthermore, even a worldwide restriction can be upheld if it is found reasonable when considering the six *Hartman* factors. This determination is premature because the complaint, while complying with federal notice pleading, lacks the information required to adequately consider those factors. At the same time, the Court cannot determine with certainty that Plaintiff will not be able to prove a set of facts which would establish this reasonableness.

Defendant's motion to dismiss Plaintiff's second claim for relief is denied, as it pertains to the noncompete provision of the employment contract.

### B.

█ Defendant has failed to address in the pleadings whether Plaintiff has sufficiently stated a claim of tortious interference with the nondisclosure provision of the employment contract. Noncompete and nondisclosure provisions may be considered separately and enforced independently under the same or distinct provisions of an employment contract.[8]

█ The North Carolina Court of Appeals recognizes that, unlike a noncompete agreement, an agreement is not a restraint of trade if it seeks to prevent disclosure or use of confidential information. *See Chemimetals Processing, Inc. v. McEne-*

*ny,* 124 N.C.App. 194, 197, 476 S.E.2d 374, 376–77 (1996). As such, a nondisclosure contract provision may be upheld "even when the agreement is unlimited as to time and area [citation omitted] upon a showing that it protects a legitimate business interest" of the employer. *Id.* (citing *Rollins, infra* at note 7, for the necessity of a legitimate business interest). Plaintiff has sufficiently alleged a business interest in protecting confidential information in satisfaction of Rule 8. Thus, Defendant's motion to dismiss Plaintiff's second claim for relief is also denied, as it pertains to the nondisclosure provision of the contract.

### IV.

Defendant moves under Rule 12(b)(6) to dismiss Plaintiff's third claim for relief, asserting that Plaintiffs have failed to state a claim of unfair and deceptive trade practices upon which relief can be granted.

█ To establish a violation of N.C.G.S. § 75–1.1, Plaintiff must prove the existence of three factors: (1) an unfair and deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or his business. *See Speedway Promoters, Inc. v. Hooter's of Am., Inc.,* 123 F.Supp.2d 956, 964 (W.D.N.C.2000); *see Kewaunee Sci. Corp. v. Pegram,* 130 N.C.App. 576, 580, 503 S.E.2d 417, 420 (1998).

---

**8.** *See Hi–Line Elec. Comp. v. Dowco Elec. Prod.,* 765 F.2d 1359, 1363 (5th Cir.1985) (considering Texas law); *Roto–Die Co., Inc. v. Lesser,* 899 F.Supp. 1515, 1522 (W.D.Va. 1995) (concluding that "the mere fact that a noncompete covenant is void does not render void the remainder of the contract," when considering Virginia law); *Rollins Protective Servs. Co. v. Palermo,* 249 Ga. 138, 142, 287 S.E.2d 546, 550 (1982) (considering Georgia law); *see also Electrical S., Inc. v. Lewis,* 96 N.C.App. 160, 385 S.E.2d 352 (1989) (reviewing trial court decision which granted a preliminary injunction regarding a nondisclosure provision, but denied preliminary injunction with respect to a noncompetition provision); *Forrest Paschal Mach. Co. v. Milholen,* 27 N.C.App. 678, 687, 220 S.E.2d 190, 197 (1975) (noting party's concession that "even absent an agreement, former employees may be restrained from divulging confidential information acquired while an employee").

Whether or not Federal notice pleading requires a plaintiff to state all elements of a claim in the complaint, it was done here. Plaintiff alleges that Defendant misappropriated, misused, and / or disclosed Plaintiff's trade secrets and tortiously interfered with Plaintiff's employment contract. The North Carolina Court of Appeals has held that N.C.G.S. § 75–1.1 is applicable to violations of the North Carolina Trade Secrets Protection Act, N.C.G.S. § 66–152. *See Drouillard v. Keister Williams Newspaper Servs., Inc.,* 108 N.C.App. 169, 172–73, 423 S.E.2d 324, 326–27 (1992) (noting though that such violation must satisfy the three prong test). Similarly, tortious interference with contract may also act as an unfair and deceptive trade practice. *See United Labs. Inc. v. Kuykendall,* 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988).

Furthermore, the alleged misappropriation of trade secrets in this case involved unfair competition in the business setting. *See* N.C.G.S. § 75–1.1(b) (defining "Commerce" to include "all business activities, however denominated"). Plaintiffs have also pled that Defendant's acts proximately caused Plaintiff to "suffer and accrue monetary damages ... believed to be in excess of $75,000." [Comp. ¶ 44.]

It should be noted that both Plaintiff and Defendant are businesses and not consumers. The North Carolina Supreme Court, and other North Carolina Courts have interpreted N.C.G.S. § 75–1.1 to apply to dealings between businesses. *See Kuykendall,* 322 N.C. at 665, 370 S.E.2d at 389 (concluding "unfair trade practices involving businesses affect the consumer as well") (citing *Olivetti v. Ames Bus. Sys., Inc.,* 319 N.C. 534, 356 S.E.2d 578 (1987)); *Dalton v. Camp,* 135 N.C.App. 32, 39, 519 S.E.2d 82, 87 (1999) (concluding, "Chapter 75 protects businesses as well as consumers"); *McDonald v. Scarboro,* 91 N.C.App.

13, 18, 370 S.E.2d 680, 683 (1988); *Philson v. Cold Creek Farms, Inc.,* 947 F.Supp. 197, 202 (E.D.N.C.1996) (rejecting argument that only consumers can bring a N.C.G.S. § 75–1.1 cause of action). In *Food Lion, Inc. v. Capital Cities / ABC, Inc.,* 194 F.3d 505, 519–20 (4th Cir.1999), the 4th Circuit observed that "one business is permitted to assert an UPTA claim against another business only when the businesses are competitors."

Plaintiff and Defendant in this case are competitors. In fact, at the crux of this lawsuit is Plaintiff's allegation that Defendant misappropriated and used confidential information to gain entry into the business of selling and distributing products used by remanufacturers of laser toner cartridges. [Comp. ¶¶ 9, 20.] Such product distribution was the "primary focus" of Plaintiff's operations, placing Plaintiff and Defendant is direct competition. [Comp. ¶ 19.]

In conclusion, Plaintiff has satisfied Rule 8 by stating a claim of unfair and deceptive trade practices upon which relief may be granted. Thus, Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's third claim is denied.

### V.

Defendants move under Rule 12(b)(1) to dismiss Plaintiff's fourth claim, alleging that this Court lacks jurisdiction over the subject matter of the claim.

In its fourth claim for relief, Plaintiff requests that the Court enter an order declaring that Plaintiff's "advertisements and communications with customers or prospective customers relating to mag rollers do not give ... [Defendant] a claims [sic] product disparagement, trade libel[,] tortious interference with prospective and existing contractual relationships, or any other claim by ... [Defendant] under any state or federal law." [Am. Comp. ¶ 9.]

Upon information in the pleadings of this case, Defendant has not filed any lawsuit regarding Plaintiff's advertisement or communications regarding "mag rollers."

Plaintiff essentially requests this Court to speculate: (1) as to the content of any communication Plaintiff may have had with customers or prospective customers, (2) as to what possible causes of action are available throughout the United States, based on such communications and the advertisement, as provided in the pleadings, and (3) decide as a matter of law that all such claims are barred.

■ Federal courts only decide cases and controversies. U.S. Const. art. III, § 2. For a case to be ripe, there must be a "real and substantial controversy admitting specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *Federal Express Corp. v. Air Line Pilots Assoc.*, 67 F.3d 961 (D.C.1995) (finding no case or controversy where negotiator threatened to "take all appropriate action" in labor dispute). The Supreme Court has established a two part test for determining ripeness, by deciding: (1) whether the issues are fit for judicial decision, and (2) whether hardship will fall to the petitioning party on withholding court consideration. *See Abbott Lab. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *rev'd on other grounds, Toilet Goods Assoc. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Regional Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465–66 (4th Cir.1999) (considering whether hardship was "direct and immediate"); *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir.1992).

■ Plaintiff's fourth claim for relief presents issues not fit for judicial decision, largely because the issues are undefined. Defendant has not brought any particular cause of action regarding the advertisement "flyer." This Court will not participate in conjecture as to what types of "communications" Plaintiff may have had with customers and speculate as to all the potential causes of actions such communications may produce. Such speculation would amount to an opinion advising what the law would be upon a hypothetical set of facts.

Secondly, Plaintiff has not shown any "direct" and "immediate" hardship that would befall it if the Court withholds consideration of Plaintiff's fourth cause of action. *See Regional Mgmt.*, 186 F.3d at 466 (quoting *Abbott*, 387 U.S. at 152, 87 S.Ct. at 1507). Plaintiff's general interest to settle a potential dispute, now, does not require immediate resolution of potential issues. *See McGhee v. Director, Department of Mental Health and Hygiene*, No. 97–2588, 1998 WL 403329, at *3 (4th Cir. July 7, 1998).

Overall, Plaintiff's fourth cause of action is not ripe for judicial determination. The Court lacks jurisdiction to consider it, and will grant Defendant's Rule 12(b)(1) motion to dismiss.

## VI.

■ Defendant moves for a more definite statement pursuant to Rule 12(e) on all claims this Court fails to dismiss pursuant to Rule 12(b)(6).

Rule 12(e) provides that a motion for a more definite statement is proper where a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *U.S. v. Taylor*, 909 F.Supp. 355, 359 (M.D.N.C. 1995). The Fourth Circuit concludes that whether to grant such a motion "is a mat-

ter generally left to the district court's discretion," but cautions

... when the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement ... Prompt resort to discovery provides adequate means for ascertaining the facts without delay in maturing the case for trial.

*Hodgson v. Virginia Baptist Hospital, Inc.,* 482 F.2d 821, 824 (4th Cir.1973).

As previously presented, Plaintiff's remaining claims of misappropriation and misuse of trade secrets, tortious interference with contract provisions, and unfair and deceptive trade practices conform to Rule 8(a). Plaintiff has sufficiently pled claims upon which relief can be granted. The complaint in this case is not so vague that Defendant cannot reasonably be required to answer. *See Tilley v. Allstate Ins. Co.,* 40 F.Supp.2d 809, 814 (S.D.W.Va. 1999) (quoting *Robinette v. Griffith,* 483 F.Supp. 28, 36 (S.D.W.Va.1979) for the proposition that Rule 12(e) is "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail").

The complaint provides sufficient notice to allow Defendant to respond to allegations that it hired away Plaintiff's employees in order to discover trade secrets regarding toner remanufacturing. Further, Defendant can be reasonably required to respond as to whether such conduct amounts to unfair and deceptive trade practices. Defendant must resort to discovery to provide the requested details of the claims. *See Shultz v. Clay Transfer Co.,* 50 F.R.D. 480, 481 (E.D.N.C.1970) (noting that the 12(e) motion "is not to be used to assist in getting facts in preparation for trial as such; other rules relating to discovery, interrogatories and the like exist for such purposes").

Defendant's motion for a more definite statement is denied.

## VII.

In conclusion, Defendant's motion to dismiss Plaintiff's first claim of relief for misappropriation and misuse of trade secrets is DENIED. Defendant's motion to dismiss Plaintiff's second claim of relief for tortious interference with contract is DENIED as it pertains to both the noncompete and nondisclosure provisions of the employment contract. Defendant's motion to dismiss Plaintiff's third claim of relief for unfair and deceptive trade practices is DENIED. Defendant's motion to dismiss Plaintiff's fourth claim of relief, requesting that the Court declare certain advertisements and communications immune from lawsuit, is GRANTED. Lastly, Defendant's motion for a more definite statement is DENIED.