BARR-MULLIN, INC. v. DOUGLAS M. BROWNING AND PRIMAVERA SYSTEMS, LTD.

No. 9110SC1117

(Filed 8 January 1993)

1. **Labor and Employment § 78 (NCI4th)— computer software— misappropriation of trade secret—preliminary injunction**

   The trial court did not err by granting a preliminary injunction in an action for misappropriation of a trade secret in developing a competing product and customizing plaintiff's software. Plaintiff presented evidence that it took reasonable measures to maintain secrecy in that the software at issue was sold in the form of programmable read only memory chips (PROMS), with the source code not available to the public, and access to the software was limited to plaintiff's employees and consultants. Plaintiff also presented evidence that the secret was not readily ascertainable through reverse engineering in affidavits which indicate that it is practically impossible to make any modification to the software using only the object code contained in the PROMS.

   **Am Jur 2d, Labor and Labor Relations § 682; Master and Servant §§ 104-106.**

   **Disclosure or use of computer application software as misappropriation of trade secret. 30 ALR4th 1250.**

2. **Labor and Employment § 78 (NCI4th)— computer software— misappropriation of trade secret**

   The trial court did not err by granting a preliminary injunction in an action for misappropriation of a trade secret in developing a competing product and customizing plaintiff's software. Plaintiff established a *prima facie* case of misappropriation in that defendant Browning helped develop the

software during his employ with plaintiff, Browning had access to the source code prior to his resignation, plaintiff had invested eight man-years in the development of the system, and access to the source code was required to make modifications.

**Am Jur 2d, Labor and Labor Relations § 682; Master and Servant §§ 104-106.**

**Disclosure or use of computer application software as misappropriation of trade secret. 30 ALR4th 1250.**

3. **Labor and Employment § 78 (NCI4th)— computer software —misappropriation of trade secret—preliminary injunction— irreparable loss**

There was sufficient evidence to satisfy the second inquiry in determining if a preliminary injunction should issue for the misappropriation of a trade secret. Misappropriation of a trade secret is an injury of such continuous and frequent recurrence that no reasonable redress can be had in a court of law. The very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects. It is also significant that plaintiff seeks a permanent injunction.

**Am Jur 2d, Labor and Labor Relations § 682; Master and Servant §§ 104-106.**

**Disclosure or use of computer application software as misappropriation of trade secret. 30 ALR4th 1250.**

4. **Labor and Employment § 78 (NCI4th)— misappropriation of trade secret—preliminary injunction—motion for reconsideration—denied**

The trial court did not abuse its discretion by denying defendants' Motion for Reconsideration and Motion to Dissolve Preliminary Injunction in an action for misappropriation of trade secrets involving computer software.

**Am Jur 2d, Injunctions §§ 291, 295, 329.**

5. **Labor and Employment § 78 (NCI4th)— misappropriation of trade secrets—computer software—preliminary injunction— amount of bond**

An action for misappropriation of trade secrets involving computer software in which a preliminary injunction had been

granted was remanded where there was no evidence in the record as to whether the trial court considered the plaintiff's ability to respond in damages should defendants be found to have been wrongfully enjoined and no evidence that the court considered the likelihood of material damage and harm to defendants in setting the bond at $10,000. The trial court on remand should set bond in an amount that bears a rational relationship to the costs and damages which defendants may incur if it is later determined defendants were wrongfully enjoined.

**Am Jur 2d, Labor and Labor Relations §§ 2175-2178.**

Appeal by defendant from order entered 30 August 1991 and order entered 14 October 1991 by Judge Dexter Brooks in Wake County Superior Court. Heard in the Court of Appeals 21 October 1992.

Plaintiff instituted this action seeking both injunctive relief and damages alleging defendants misappropriated its trade secrets. Evidence in the record discloses that plaintiff is a corporation engaged in selling lumber processing equipment to customers in the woodworking industry. COMPU-RIP, a "lumber optimization system," is one of the processing systems sold by plaintiff. This system has a computer software program which acts as the "brain," taking in data regarding the approaching lumber and instructing the mechanical handling components as to how to guide the lumber through the saw. COMPU-RIP was first offered for sale in 1986 and has received the Challengers Award, an honor recognizing significant developments in the woodworking industry.

From March 1985 through December 1986, plaintiff employed Douglas Browning (defendant) as an independent consultant to develop the computer software for the COMPU-RIP system. In December of 1986, Browning was employed by plaintiff as its vice-president of engineering. From 1987 through 1989 Browning played a role in installing COMPU-RIP systems at various plant sites; his duties included installing the COMPU-RIP software and providing assistance to customers once the systems were installed.

In January of 1990, Browning informed plaintiff of his intention to resign from plaintiff's employ. Shortly thereafter, Browning incorporated defendant Primavera Systems. Around this same time, Browning entered into negotiations with plaintiff whereby defend-

ant proposed to remain associated as an independent consultant authorized by plaintiff to render computer systems service to COMPU-RIP owners. These negotiations failed and Browning resigned effective 23 August 1990.

After Browning's resignation, defendants began developing a lumber optimization system known as LumberScan. In addition, defendants also began to provide technical assistance to COMPU-RIP purchasers by customizing the COMPU-RIP computer software to meet the individual needs of the owner. Plaintiff filed the present suit alleging that the computer software used in COMPU-RIP is its trade secret and the aforementioned activities of defendants constitute misappropriation of a trade secret in violation of G.S. 66-152, *et seq.*

On 19 July 1991, the trial court entered a temporary restraining order enjoining defendants from selling or licensing any software product which uses the trade secrets of plaintiff and further enjoined defendants from modifying the COMPU-RIP software. At the preliminary injunction hearing, the trial court, after considering the pleadings, affidavits and arguments of counsel, entered an order on 30 August 1991 granting plaintiff's motion for preliminary injunction. By means of this order, defendants were prohibited from:

(1) Marketing, offering for sale or license any software product relating to computer assistance or control of the operation of a gang rip saw;

(2) Modifying in any manner any software product which has been sold by the Plaintiff to any third party, or offering to perform such services; and

(3) Disclosing or attempting to disclose to any third party any information related to the software products of the Plaintiff, including, but not limited to the Plaintiff's product COMPU-RIP.

The trial court further ordered an injunction bond in the amount of $10,000. On 5 September 1991, defendant made a Motion for Reconsideration and Motion to Dissolve Preliminary Injunction. The trial court denied this motion by order entered 14 October 1991.

*Graham & James, by John R. Rittelmeyer and Mark Anderson Finkelstein, for plaintiff appellee.*

*Poyner & Spruill, by Louis B. Meyer, III and Dianna W. Jessup, for defendants appellants.*

WALKER, Judge.

[1] In their first assignment of error, defendants argue the trial court erred in granting the preliminary injunction. We first note the scope of appellate review in this matter is essentially *de novo*. *Robins & Weill, Inc. v. Mason*, 70 N.C.App. 537, 320 S.E.2d 693, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 559 (1984). In reviewing a trial court's grant of a preliminary injunction, "an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Industries v. McClure*, 308 N.C. 393, 402, 302 S.E.2d 754, 760 (1983).

As a general rule, a court may issue a preliminary injunction "only. (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). As *Ridge Community Investor's* indicates, the first inquiry is whether plaintiff is able to show a likelihood of success on the merits. This involves an application of the trade secret doctrine to the rapidly expanding field of computer technology. "It is well settled that an injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information." *Travenol Laboratories, Inc. v. Turner*, 30 N.C.App. 686, 692, 228 S.E.2d 478, 483 (1976).

Under the North Carolina Trade Secret Protection Act, a trade secret is defined as follows:

[B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**BARR-MULLIN, INC. v. BROWNING**

[108 N.C. App. 590 (1993)]

G.S. 66-152(3). "Misappropriation" occurs when there is:

[A]cquistion, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.

G.S. 66-152(1). In the present case, defendants contend the COMPU-RIP software is not a trade secret and that even if it is a trade secret, defendants' actions do not constitute "misappropriation."

**Establishment of Trade Secrets**

According to defendants, the COMPU-RIP software is not a trade secret since it is (1) not subject to reasonable efforts to maintain its secrecy and (2) defendants reverse engineered this software. In order to answer the question of whether plaintiff took reasonable efforts to maintain the secrecy of the COMPU-RIP software, it is necessary to be familiar with the form in which this software was distributed. The COMPU-RIP software is contained in the form of "programmable read-only memory chips" (PROMS) imbedded in the COMPU-RIP machinery. These PROMS contain only the "object code" version of the computer program. This is the version of the computer software which is "read" by the computer's machinery. Computer programmers do not write computer software in object code; rather, the software is written in "source code" and then translated into object code so that the computer can execute the program. *See* Comment, *The Incompatibility of Copyright and Computer Software: An Economic Evaluation and a Proposal for a Marketplace Solution*, 66 N. C. L. Rev. 977, 979 n.14 (1988). Since the COMPU-RIP software was sold in PROM form, the source code was not available to the general public. At least one court has found that as regards computer software, the secrecy component of a trade secret is not compromised when only the object code version of the software is distributed to customers. *Q-CO Industries, Inc. v. Hoffman*, 625 F.Supp. 608, 617-618 (S.D.N.Y. 1985).

Plaintiff presented additional evidence tending to show the COMPU-RIP software was subject to reasonable efforts to maintain its secrecy. The affidavit of A. G. Mullin, plaintiff's president, indicates that access to the software was limited to plaintiff's employees and consultants. The affidavits of Timothy Toombs and Gary Ruggles,

who holds a Ph.D in Electrical Engineering, indicate that because the COMPU-RIP software is distributed in object code form it is practically impossible to make any meaningful changes to the software. This evidence establishes the COMPU-RIP software was subject to reasonable efforts to maintain its secrecy. "Although information that is generally known cannot be a trade secret, . . . absolute secrecy is not required." *Q-CO Industries, Inc. v. Hoffman*, 625 F.Supp. at 617.

Defendants next argue the COMPU-RIP software was not a trade secret since defendant Browning rediscovered the COMPU-RIP source code by means of reverse engineering. A party asserting the existence of a trade secret does not have to establish the *impossibility* of reverse engineering. Plaintiff must merely show the alleged trade secret was not "*readily ascertainable* through . . . reverse engineering." G.S. 66-152(3) (emphasis added).

As to the question of reverse engineering, plaintiff presented the affidavits of Timothy Toombs and Gary Ruggles which indicate that it is practically impossible to make any modification to the COMPU-RIP software using only the object code contained in the PROMS. We find the evidence presented establishes the COMPU-RIP software was not "readily ascertainable" through reverse engineering.

**Misappropriation of Trade Secrets**

[2] Defendants next argue that plaintiff was not entitled to a preliminary injunction since it has not established misappropriation of its trade secret. A *prima facie* case of misappropriation is established where plaintiff presents substantial evidence that (1) defendant knows or should have known of the trade secret; and (2) defendant has had a specific opportunity to acquire the trade secret. G.S. 66-155. Here, a *prima facie* case of misappropriation exists since defendant Browning helped to develop the COMPU-RIP software during his employ with plaintiff and Browning had access to copies of the COMPU-RIP source code prior to his resignation. Further, according to its president, plaintiff invested eight man-years in the development of the COMPU-RIP system. Toombs and Ruggles stated in their affidavits that in order to make modifications to the COMPU-RIP software, access to the source code is required; it is practically impossible to make any substantial modification to COMPU-RIP possessing only the object code. After review-

ing the record from the preliminary injunction hearing, we find plaintiff has shown a likelihood of success on the merits of its case.

[3] The second inquiry in determining if a preliminary injunction should issue is whether "plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Ridge Community Investors Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). Our Supreme Court has stated that "injury is irreparable where the damages are estimable only by conjecture, and not by any accurate standard." *A.E.P. Industries Inc. v. McClure*, 308 N.C. 393, 407, 302 S.E.2d 754, 762 (1983), *quoting* 42 Am. Jur.2d *Injunctions* § 49 (1969). To prove irreparable injury, "it is not essential that it be shown that the injury is beyond the possibility of repair or possible compensation in damages, but that the injury is one to which the complainant should not be required to submit or the other party permitted to inflict, and is of such continuous and frequent recurrence that no reasonable redress can be had in a court of law." *Barrier v. Troutman*, 231 N.C. 47, 50, 55 S.E.2d 923, 925 (1949); *see also A.E.P. Industries, Inc. v. McClure* at 407, 302 S.E.2d at 763.

In our belief, misappropriation of a trade secret is an injury of "such continuous and frequent recurrence that no reasonable redress can be had in a court of law." The very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects. The party wronged may forever lose its competitive business advantage or, at the least, a significant portion of its market share. Furthermore, the amount of actual damages awarded for misappropriation is measured "by the economic loss or the unjust enrichment . . . whichever is greater." G.S. 66-154(b). It is also significant that plaintiff seeks a permanent injunction. Our Courts have "consistently adhered to the proposition that where the principal relief sought is a permanent injunction, it is particularly necessary that the preliminary injunction issue." *A.E.P. Industries, Inc. v. McClure* at 408, 302 S.E.2d at 763. As plaintiff presented sufficient evidence to satisfy both tests for issuance of a preliminary injunction, we find the trial court acted correctly in issuing the preliminary injunction.

[4] By means of their second assignment of error, defendants argue the trial court erred in denying their Motion for Reconsideration

and Motion to Dissolve Preliminary Injunction. Defendants contend the additional evidence presented at the hearing on this motion establishes that the preliminary injunction should be dissolved.

We note that a refusal to dissolve a temporary injunction is addressed to the discretion of the trial court and can only be set aside if there is an abuse of discretion. *Conservation Council of North Carolina v. Costanzo*, 528 F.2d 250 (4th Cir. 1975). Here, defendants presented additional evidence on the questions of .(1) reverse engineering of the COMPU-RIP software and (2) independent development of defendants' LumberScan system. However, in reviewing this additional evidence, we find that the trial court did not abuse its discretion in denying defendants' motion.

[5] In their final assignment of error, defendants argue that the trial court erred in setting the preliminary injunction bond at only $10,000. According to defendants, evidence presented at trial disclosed that this amount is insufficient to cover their damages in the event defendants succeed on the merits at trial.

Before a preliminary injunction will issue, a bond must be posted "in such sum as the judge deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Rule 65(c), N.C. Rules of Civil Procedure. "Since the purpose of the security requirement is to protect the restrained party from damages incurred as a result of the wrongful issuance of the injunctive relief, the trial court has the discretion to determine what amount of security, if any, is necessary to protect the enjoined party's interests." *Keith v. Day*, 60 N.C.App. 559, 561, 299 S.E.2d 296, 297 (1983).

In the present case, evidence in the record reveals that defendants invested considerable resources in the development and marketing of LumberScan and that losses in sales would be substantial if the preliminary injunction remains in place. There is no evidence in the record as to whether the trial court considered the plaintiff's ability to respond in damages should defendants be found to have been wrongfully enjoined, nor is there any evidence that the trial court considered the likelihood of material damage and harm to defendants in setting the bond at $10,000. On remand, the trial court should, upon consideration of the above factors, set bond in an amount that bears a rational relationship to the

costs and damages which defendants may incur if it is later determined defendants were wrongfully enjoined.

Affirmed in part, reversed in part, and remanded with directions.

Judges GREENE and WYNN concur.