DSM Dyneema,LLC v. Thagard, 2014 NCBC 50.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 1686

DSM DYNEEMA, LLC,

        Plaintiff,

v.

JAMES THAGARD, Ph.D.;
HONEYWELL SPECIALTY
MATERIALS, LLC; HONEYWELL
ADVANCED COMPOSITES, INC.;
and HONEYWELL
INTERNATIONAL, INC.,

        Defendants.

ORDER AND OPINION

{1}    **THIS MATTER** is before the Court upon Defendants Honeywell Specialty

Materials, LLC, Honeywell Advanced Composites, Inc., and Honeywell

International, Inc.'s (collectively, the "Honeywell Defendants") Motion for Protective

Order (the "Motion for Protective Order") and Plaintiff DSM Dyneema, LLC's

("Plaintiff") Motion to Compel Responses to Requests for Production (the "Motion to

Compel").  After review of the Motions, briefs in support of and in opposition to the

Motions, and the arguments of counsel at a hearing held on October 1, 2014, the

Court **GRANTS in part** the Honeywell Defendants' Motion for Protective Order and

**DENIES** Plaintiff's Motion to Compel, each with the right to renew as specifically

provided below.

> *McCullough Ginsberg Montano & Partners LLP by Theodore McCullough and C.*
> *Dino Haloulos, and Bell, Davis & Pitt, P.A. by Edward B. Davis and Kevin G.*
> *Williams for Plaintiff DSM Dyneema, LLC.*

> *Kirkland & Ellis LLP by Craig S. Primis and Daniel A. Bress, and Erwin,*
> *Bishop, Capitano & Moss, P.A. by Joseph W. Moss, Jr., and Lex M. Erwin for*

*Defendants Honeywell Specialty Materials, LLC, Honeywell Advanced Composites, Inc. and Honeywell International, Incorporated.*

Bledsoe, Judge.

I.

INTRODUCTION

{2}     This case involves Plaintiff's claims arising out of Defendants' alleged misappropriation of Plaintiff's trade secrets.  The issue for decision on the Motions is whether Plaintiff has identified the trade secret information it claims has been misappropriated with sufficient particularity at this stage of the litigation to entitle Plaintiff to discovery of the Honeywell Defendants' confidential information and trade secrets.

{3}     The Honeywell Defendants contend that Plaintiff has not met its burden and, as a result, have moved for a protective order requiring Plaintiff to identify its trade secrets with greater particularity before the Honeywell Defendants are required to respond to Plaintiff's requests for production and disclose their confidential information and trade secrets.  Plaintiff contends that it has identified the misappropriated trade secrets with the sufficient particularity required under applicable North Carolina law and moves for an order compelling the Honeywell Defendants to respond to Plaintiff's requests for production without further delay.[1]

---

[1] The parties' fact discovery deadline is currently set to expire on October 31, 2014.

II.

FACTUAL BACKGROUND

{4} Plaintiff and the Honeywell Defendants are competitors in the ballistic performance material production industry and have historically competed for United States Department of Defense contracts involving the development of fibers used in enhanced combat helmets ("ECH"). Plaintiff specifically developed its ECH designs for use in combat helmets manufactured by Ceradyne, Inc. ("Ceradyne").

{5} In 2010, the Honeywell Defendants hired Defendant Dr. James Thagard, Plaintiff's former chief scientist and technical leader who had previously overseen Plaintiff's ECH program. In February 2013, Ceradyne ended its relationship with Plaintiff and awarded an ECH contract to the Honeywell Defendants.

{6} Thereafter, on August 2, 2013, Plaintiff filed its Amended Complaint in Gaston County Superior Court, asserting claims against the Honeywell Defendants and/or Defendant Thagard for misappropriation of trade secrets, tortious interference with existing and prospective business relations, tortious interference with contract, conversion, breach of fiduciary duty, breach of contract, unjust enrichment, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1.

{7} Plaintiff identified its trade secret material in its Amended Complaint as follows:

> [d]uring the course of his employment with DSM, Thagard was exposed to confidential and proprietary business information, trade secrets, and know-how of DSM, including, but not limited to, technical information and formulas, proprietary product development information and technical know-how regarding the Dyneema HB80 UHMWPE material and regarding the incorporation of Dyneema HB80 into helmets for optimal performance, proprietary development tools,

proprietary software applications, design details, product design and application (including, but not limited to, resin types, matrix characteristics, fiber properties, number of plies, air content, stiffness, and aging), processing know-how, manufacturing know-how (including, but not limited to, creep forming, vacuum processing, deep draw, optimal temperature and pressure, and adhesives), matrix stiffness, ratio of resin to fiber, interlaminar strength, areal density, elasticity, flexural properties, tenacity, matrix interface, role of coefficient of thermal expansion, prevention of delamination and other deformation, test methods and results, marketing and sales strategies and practices, pricing and contractual details for customers, customer profits, business costing data, customer correspondence, business plans, area plans, license reviews, proposed applications, meeting minutes, marketing data, customer lists, prospect lists, competitive bid information, employee lists, and internal strengths and weaknesses, among other information (the "Trade Secrets"). DSM's Trade Secrets also include the results of DSM's resin and materials testing program, which include the optimal number of filaments per ply to increase performance, optimal resin types, proprietary information and technical know-how regarding optimal temperature, and proprietary information and technical know-how regarding effective pressure. DSM's Trade Secrets were developed, used, and expanded while Thagard oversaw DSM's ECH Project and the development of DSM's ECH product.

(Pl.'s Compl. ¶ 14; Pl.'s Br. Supp. Mot. Compel, p. 3–4.)

{8}    In response to the Honeywell Defendants' First Set of Interrogatories, Plaintiff provided a further narrative and a more specific description of its trade secret information as follows:

From ECH project inception to 2013, the areas of know-how that DSM shared and that are alleged to have been incorporated into, and/or to have advanced, the current ECH helmet design include, at a minimum:

1. Resin (matrix) types: their characteristics and suitability for new ballistic materials
2. Adhesives used in helmet manufacture
3. Fiber characteristics of ballistic material, as they relate to ECH production issues
4. Number of plies of UD board to be used in new ballistic materials

5. Air content of the helmet shell and its relation to ballistic performance
6. Aging of the helmet shell and its relation to air content and ballistic performance
7. Air content of plies of UD board: effect on ballistic performance
8. Air content of pressed panels: effect on ballistic performance
9. Interlaminar shear strength of a "resin-starved" system
10. Coefficient of thermal expansion of materials
11. Hardness of materials, as related to blunt trauma protection
12. Stiffness of materials, as related to blunt trauma protection and back-face deformation
13. Aging of the materials: effect on material stability
14. Ways in which manufacturing process variables were adjusted to increase helmet performance:
    a. Optimal temperature range for helmet processing
    b. Maximum temperature for helmet processing
    c. Pressure amount used for helmet processing
    d. Pressure type used for helmet processing
    e. Vacuum process technique used for helmet processing to increase helmet performance
    f. Combined effect of vacuum process technique and aging
    g. "Deep draw" technique used for helmet processing
    h. "Creep forming" technique used for helmet processing
15. Joint testing and sharing of results
16. DSM technical expertise shared with Ceradyne in addressing Ceradyne's specific production problems
17. Particular knowledge components, combined with ongoing testing, leading to an accumulation and buildup of knowledge and a specific end result

(Defs.' Br. Supp. Mot. Protective Order, p. 6; Pl.'s Br. Supp. Mot. Compel, p. 6–7; Defs.' Resp. Pl.'s Mot. Compel, Exs. I, K-1–K-2.)

{9} On April 1, 2014, Plaintiff served its First Requests for Production on the Honeywell Defendants, requesting documents related to the Honeywell Defendants'

ECH program and seeking other information the Honeywell Defendants contend is confidential or constitutes its trade secrets. The Honeywell Defendants objected to the Requests as overbroad, vague, and unduly burdensome, and refused to produce responsive documents because Plaintiff had not yet "identified with any reasonable degree of particularity the confidential trade secrets that it claims to be protecting through this action . . . ." (Pl.'s Br. Supp. Mot. Compel, Ex. B.)

{10}  Thereafter, Plaintiff served its Second Requests for Production, requesting production of samples of the Spectra Shield composite material used by the Honeywell Defendants in the ECH program. (Defs.' Br. Supp. Mot. Protective Order, p. 5.) The Honeywell Defendants again objected to Plaintiff's Second Requests as overbroad, vague, unduly burdensome, and unwarranted in the absence of an adequate trade secret identification by Plaintiff.

{11}  In response to the objections, Plaintiff sent the Honeywell Defendants a letter dated July 18, 2014, challenging the Honeywell Defendants' objections, but ultimately narrowing the scope of the production sought. (Pl.'s Br. Supp. Mot. Compel, Ex. D.) The Honeywell Defendants did not produce documents responsive to the July 18, 2014 letter, standing on their contention that they should not be required to produce their confidential information and trade secrets until Plaintiff has identified with sufficient particularity the trade secrets it claims the Honeywell Defendants have misappropriated.

{12}  After the parties were unable to reach agreement concerning the propriety and scope of production, Plaintiff filed its Motion to Compel and the Honeywell

Defendants filed their Motion for Protective Order. After briefing was completed, the Court held a hearing on both Motions on October 1, 2014. The Motions are now ripe for decision.

III.

ANALYSIS

A. Pre-discovery identification of trade secrets

{13} North Carolina's liberal discovery rules permit parties to obtain discovery on any relevant, non-privileged matter that appears "reasonably calculated to lead to the discovery of admissible evidence." N.C. R. Civ. P. Rule 26(b) (2014); *Analog Devices, Inc. v. Michalski*, 2006 NCBC 14 ¶ 40 (N.C. Super. Ct. Nov. 1, 2006), www.ncbusinesscourt.net/opinions/2006%20NCBC%2014.htm (requiring production of documents and splitting the cost of production between the parties). However, "[i]t is equally clear under the Rules that North Carolina judges have the power to limit or condition discovery under certain circumstances." *Id.*, at ¶ 40. Rule 26(c) provides that

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the judge of the court in which the action is pending may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the discovery not be had; that the discovery may be had only on specified terms and conditions . . . that the scope of the discovery be limited to certain matters . . . [and] that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way . . . .

N.C. R. Civ. P. 26(c) (2014).

{14}  Under North Carolina law, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003).  It is not sufficient for a plaintiff to make "general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008).

{15}  Most North Carolina cases assessing whether a plaintiff has identified its misappropriated trade secrets with "sufficient particularity" have been decided as a matter of proper pleading at the motion to dismiss stage of the litigation, *e.g., id.* at 325, 660 S.E.2d at 585; *McKee v. James*, 2013 NCBC 38 ¶ 84 (N.C. Super. Ct. July 24, 2013), http://www.ncbusinesscourt.net/opinions/2013_NCBC_38.pdf; upon presentation of evidence on a motion for preliminary injunction, *e.g., Analog Devices*, 157 N.C. App. at 463, 579 S.E.2d at 451; *Horner Int'l Co. v. McKoy*, 754 S.E.2d 852, 855 (N.C. Ct. App. 2014); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004); *Unimin Corp. v. Gallo*, 2014 NCBC 43 ¶ 41 (N.C. Super. Ct. Sep. 4, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_43.pdf; after the completion of discovery on a motion for summary judgment, *e.g., Stephenson v. Langdon*, 2010 N.C. App. LEXIS 1682 (N.C. Ct. App., Sept. 7, 2010); *Panos v. Timco Engine Ctr., Inc.*, 197 N.C. App. 510, 519, 677 S.E.2d 868, 875 (2009); or at trial, *e.g., Sunbelt*

*Rentals, Inc. v. Head & Engquist Equip., LLC*, 174 N.C. App. 49, 59, 620 S.E.2d 222, 230 (2005); *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 542 S.E.2d 689 (2001).

{16} The Court is not aware of a reported North Carolina state court decision applying the "sufficient particularity" evaluation as a threshold requirement to plaintiff's discovery into a defendant's trade secrets.[2] Numerous federal courts, however, including the Western District of North Carolina, have held that a plaintiff alleging a trade secret misappropriation claim must identify its trade secrets with reasonable particularity before it is allowed to obtain discovery of a defendant's confidential information and trade secrets.[3] *See, e.g., Ikon Office Solutions, Inc. v. Konica Minolta Business Solutions, U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 116372, *11–*12 (W.D.N.C., Nov. 25, 2009) (holding that "a [p]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets"); *Lwin Family Co. v. Aung Min Tun*, 2012 U.S. Dist. LEXIS 146294, *2 (W.D.N.C., Oct. 11, 2012) (noting that a "trade secret defendant is protected from discovery until the claimant has made a pre-discovery identification of the trade secrets involved"); *BioD, LLC v.*

---

[2] This Court's unpublished order in *Unimin Corp. v. Gallo*, No. 14 CVS 141 (N.C. Super. Ct., Aug. 20, 2014), cited by the Honeywell Defendants at the hearing, required the plaintiff to make a more specific identification of its trade secrets after the Court ordered plaintiff and defendants to simultaneously exchange narrowly-focused expedited discovery requests and responses, including trade secret information, in connection with plaintiff's motion for preliminary injunction.

[3] Because the North Carolina Rules of Civil Procedure are substantially similar to the Federal Rules of Civil Procedure, our courts often look to federal cases for interpretive guidance. *Turner v. Duke Univ.,* 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989); *Moody v. Sears Roebuck & Co.,* 191 N.C. App. 256, 266, 664 S.E.2d 569, 576 (2008).

*Amnio Tech., LLC*, 2014 U.S. Dist. LEXIS 109755, *17 (D. Ariz., Aug. 6, 2014) (holding that "to ensure that plaintiffs are not on a fishing expedition and so that the court and defendants can discern the relevancy of plaintiffs' discovery requests, it would be appropriate for plaintiffs to identify their trade secrets with reasonable particularity"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2011 U.S. Dist. LEXIS 117757, *2 (D. Colo., Oct. 12, 2011) ("[A] plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed . . . to compel discovery of its adversary's trade secrets.").

{17} An unpublished Order by Judge Tennille on a motion to compel in *SCR-Tech, LLC v. Evonik Energy Servs. LLC*, No. 08 CVS 16632 (N.C. Super. Ct. Dec. 30, 2009), cited by Plaintiff, is to similar effect. In that case, Judge Tennille delayed the plaintiff's discovery into the defendants' confidential information and trade secrets until he had concluded the plaintiff had described its trade secrets "with sufficient particularity so as to put [the defendants] on notice of what trade secrets they [were] accused of misappropriating" and "to enable the court to protect the litigants' trade secrets and confidential methods of operation from potential misuses of the discovery processes." *Id.* at ¶ 1. Rather than offer broad generalities or list common product or process components, the plaintiff in *SCR-Tech* "describ[ed] in detail the underlying process it use[d] for creating catalyst regeneration recipes and the criteria it use[d] to interpret catalyst tests." Based on this specific identification of the plaintiff's trade secrets, Judge Tennille determined that the defendants

should respond to discovery "in light of the trade secret definitions disclosed." *Id.* at ¶ 4.

{18}  Requiring plaintiffs to make pre-discovery disclosure of their misappropriated trade secrets is supported by strong practical and policy reasons, including to assist the trial court "in determining relevancy and the scope of discovery," *e.g., Ikon*, at *12, to prevent fishing expeditions into a competitor defendant's trade secrets, *e.g., Ray v. Allied Chemical Corp.*, 34 F.R.D. 456, 457 (S.D.N.Y. 1964) (observing that without pre-discovery identification, "it would be a simple matter to obtain one's trade secret by the mere assertion of a claim"), to deny a plaintiff the opportunity to craft a trade secret claim to fit the evidence from the defendant, *e.g., Switch Commc'ns Grp. v. Ballard*, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (noting that pre-discovery identification "ensures that [plaintiff] will not mold its cause of action around the discovery it receives"), to permit the defendant a fair opportunity to develop its defense, *e.g., USAA v. Mitek Sys.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013) ("Pre-discovery identification . . . provides the defendants with an equal playing field, allowing them ample time and opportunity to develop their defense rather than ambushing them on the eve of trial."), to prevent "needless exposure of the defendant's trade secrets," *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007), and to allow well-investigated claims to proceed while discouraging meritless trade secret claims. *USAA,* 289 F.R.D. at 248 ("[pre-discovery identification] allows the Court to utilize its resources more effectively by exposing the viable claims, permitting early dismissal of the

nonviable claims, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses").

{19}   Nevertheless, there are countervailing considerations that counsel caution in strictly requiring a plaintiff's pre-discovery identification of its trade secrets in all cases, including recognition of the broad right to discovery under federal and state rules of civil procedure, *e.g.*, *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 359 (E.D. Cal. 1993) ("with respect to discovery request [sic] in general, courts are to broadly construe relevancy requirements"), the inherent difficulty in certain situations of identifying what portions of trade secrets have been misappropriated prior to receipt of discovery from defendants, *e.g.*, *DeRubeis*, 244 F.R.D. at 680 ("[T]he trade secret plaintiff, particularly if it is a company that has hundreds of thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating."), and the possibility that premature trade secret identification may encompass non-trade secret information or may be too specific to capture all misappropriated trade secrets, *e.g.*, *id.* ("If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret . . . If instead it is too specific, it may miss what the defendant is doing.").

{20}   The Court must strike a balance in assessing these considerations and determining the appropriate discovery and the appropriate sequence of discovery where misappropriation of trade secrets has been alleged.  *See Microwave Research*

*Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 672 (D. Mass. 1986) ("In cases involving the disclosure of confidential information and/or trade secrets, the Court must strike a balance.").

{21} Assessing these various considerations in the context of the facts here, the Court finds the reasoning in *SCR-Tech* and the other cases requiring pre-discovery disclosure of trade secrets persuasive and concludes that Plaintiff should be required to identify the trade secrets it claims the Honeywell Defendants have misappropriated with sufficient particularity before the Honeywell Defendants are required to produce their confidential information and trade secrets to Plaintiff in discovery.

B. Sufficiency of Plaintiff's trade secret identification

{22} Having decided that pre-discovery identification is required, the Court now turns to the sufficiency of Plaintiff's specific identifications here for purposes of the Motions. Although Plaintiff has offered lengthy narrative descriptions in its Amended Complaint and in its discovery responses, the actual trade secret descriptions Plaintiff offers are broadly stated, lack particularity and in large part appear to simply identify features that are common to all ballistic materials or common to the development and manufacture of ballistic materials. Plaintiff does not explain how any of these features are unique to Plaintiff's products or processes, how any of these features have been modified or used in ways that are unique to Plaintiff, or ultimately how Plaintiff has a protectable trade secret in any of the identified features or components Plaintiff lists. Plaintiff's identifications stand in

stark contrast to those Judge Tennille found sufficient in *SCR-Tech* to justify discovery. *Compare SCR-Tech, supra*, *2 (permitting discovery after plaintiff "describe[d] "in detail the underlying process it use[d] for creating catalyst regeneration recipes and the criteria it use[d] to interpret catalyst tests"), *with Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 2007 WL 4303294, at *4 (E.D. Mich., Dec. 6, 2007) (denying discovery of defendant's trade secrets and finding insufficient plaintiffs' "list of general categories and types of information they allege comprise their trade secrets"), *and Hill v. Best Med. Int'l, Inc.*, 2010 U.S. Dist. LEXIS 62726, *14 (W.D. Pa., June 24, 2010) (denying discovery of defendant's trade secrets because plaintiff's "general allegations and generic references to products [were] insufficient to satisfy . . . [the] burden of identifying . . . misappropriated trade secrets with 'reasonable particularity . . .'").

{23} In short, Plaintiff must do more before discovery of the Honeywell Defendants' confidential information and trade secrets is appropriate here. Although "sufficient particularity" at this stage does not require Plaintiff to "define every minute detail of its trade secrets down to the finest detail or require a mini-trial on misappropriation" before Plaintiff is granted discovery of the Honeywell Defendants' trade secret information, *see Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 U.S. Dist. LEXIS 77493, *5 (N.D. Cal., June 4, 2014), Plaintiff's identification must be sufficiently particular to put the Honeywell Defendants on notice of the specific nature of Plaintiff's trade secret claims and allow the Honeywell Defendants and the Court to determine the relevance of Plaintiff's requested discovery. *See,*

*e.g., Xerox Corp. v. IBM*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it . . . The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are.").

{24} In particular, to obtain discovery of the Honeywell Defendants' trade secrets and confidential information, Plaintiff cannot claim that a method or process is a trade secret at this stage of the litigation "without identifying the steps in the process and explaining how those steps make [the] method or process unique." *BioD, LLC*, 2014 U.S. Dist. LEXIS 109755, *18; *see also Stoneeagle Servs., Inc. v. Valentine*, 2013 U.S. Dist. LEXIS 188512, *13 (N.D. Tex., June 5, 2013) ("Requiring [the plaintiffs] to describe how the claimed trade secret is unique from that which is found in the public domain will [help the defendants craft their discovery responses, provide relevant documents, and limit objections].").  Similarly, Plaintiff must specifically describe "what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination" before discovery of the Honeywell Defendants' trade secrets and confidential information will be permitted. *Switch Commc'ns Grp.*, 2012 WL 2342929, at *5; *see Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 153 (D. Del., Nov. 18, 1970) ("If [the plaintiff] is, in fact, relying for its trade secret allegations on a unique combination of known components disclosed to [the defendant], [the plaintiff] should be required to specifically describe what particular combination of components it has in mind, how those components are combined,

and how they operate in a unique combination . . . This matter cannot be left to pure speculation and conjecture."); *see generally DeRubeis*, 244 F.R.D. at 681.

{25} Based on the foregoing, the Court concludes that Plaintiff has not identified its alleged trade secrets with sufficient particularity under North Carolina law at this pre-discovery stage of the litigation to enable the Honeywell Defendants to delineate that which they are accused of misappropriating and the Court to protect the parties' trade secret and confidential information from potential misuse through discovery. Accordingly, the Court will not require the Honeywell Defendants to produce its confidential information and trade secrets to Plaintiff until Plaintiff identifies the trade secrets it claims Defendant has misappropriated with sufficient particularity consistent with this Order.[4]

{26} As noted previously, the Honeywell Defendants also challenged Plaintiff's discovery requests as overly broad, vague and unduly burdensome. The Honeywell Defendants' counsel suggested at the hearing that in the event the Court required Plaintiff to provide a more specific identification of its trade secrets, the Court should consider deferring a ruling on the Honeywell Defendants' challenges on these grounds to permit the parties an opportunity to negotiate the scope of Plaintiff's discovery requests in light of the Court's Order. The Court finds merit in this suggestion and thus denies the Honeywell Defendants' Motion for Protective Order on grounds of overbreadth, vagueness and burdensomeness without prejudice

---

[4] The Court notes that, with the consent of the parties, the Court (Murphy, J.) entered a Stipulation and Protective Order on October 10, 2013 to protect the disclosure of confidential and trade secret information in this litigation. Any disclosure of confidential or trade secret information pursuant to this Order may be made under the provisions of the Stipulation and Protective Order.

to the Honeywell Defendants' right to renew their Motion for Protective Order, and Plaintiff's right to renew its Motion to Compel, should the parties fail to reach agreement on the scope of Plaintiff's discovery requests in light of this Order.

IV.

CONCLUSION

{27}  **IT IS THEREFORE ORDERED**, **ADJUDGED** and **DECREED** as follows:

a.  The Honeywell Defendants' Motion for Protective Order is **GRANTED**, except as **DENIED** as set forth in paragraph 26 and subject to a right to renew;

b.  Plaintiff's Motion to Compel is **DENIED**, subject to a right to renew as set forth in paragraph 26;

c.  Plaintiff is directed to supplement its responses to the Honeywell Defendants' discovery requests consistent with this Order within twenty (20) days of the entry of this Order;

d.  Each party shall bear its own costs and expenses related to these Motions; and

e.  All other requested relief is **DENIED**.

**SO ORDERED**, this the 17th day of October 2014.