Barings LLC v. Fowler, 2025 NCBC 6.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

BARINGS LLC,

　　　　　　Plaintiff,

v.

IAN FOWLER, KELSEY TUCKER,
and CORINTHIA GLOBAL
MANAGEMENT LIMITED,

　　　　　　Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV012798-590

**ORDER AND OPINION
ON MOTIONS TO DISMISS**

1.　In March 2024, twenty-two members of Barings LLC's Global Private Finance group resigned in unison to join Corinthia Global Management Limited, a fledgling competitor. In this lawsuit, Barings alleges that the departing employees took its trade secrets and other confidential information at Corinthia's direction. Barings also alleges that Corinthia conspired with Ian Fowler (a leader of the Global Private Finance group) and Kelsey Tucker (Barings's former head of global operations) in orchestrating the raid.

2.　Corinthia, Fowler, and Tucker deny these allegations and have separately moved to dismiss all claims in Barings's amended complaint. For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motions to dismiss.

*Ellis & Winters LLP, by Dixie T. Wells and David Keirstead, and Dechert LLP, by Bina Peltz, Neil A. Steiner, Angela Liu, Harnelle C. St. Cloud, Nina Segovia Riegelsberger, Christopher Merken, and Sierra Sanchez, for Plaintiff Barings LLC.*

*Williams Mullen, by Michael C. Lord and Robert C. Van Arnam, and Hughes Hubbard & Reed LLP, by Carl Wellington Mills, Derek Adler, and Robb Patryk, for Defendant Corinthia Global Management Limited.*

*Johnston, Allison & Hord, P.A., by Greg C. Ahlum and David E. Stevens, and Goldberg Kohn Ltd., by Michael Lawrence Sullivan, Jon E. Klinghoffer, and Kyle Walther, for Defendant Ian Fowler.*

*Fitzgerald Hanna & Sullivan, PLLC, by Douglas W. Hanna, and Epstein Becker & Green, P.C., by Katherine Rigby, Peter Steinmeyer, and Erik Weibust, for Defendant Kelsey Tucker.*

Conrad, Judge.

## I.
## BACKGROUND

3.     The Court does not make findings of fact on a motion to dismiss.  The following background assumes that the allegations of the amended complaint are true.[1]

4.     Barings is an "asset management firm."  Its Global Private Finance group "provides investment management to [affiliate] Barings BDC, non-traded business development companies, private funds, and separately managed accounts along with other vehicles."  This group is based partly in Charlotte, North Carolina and partly in London, England.  (Am. Compl. ¶¶ 2, 18, 19, ECF No. 69.)

5.     Until March 2024, Fowler "was an officer and managing director of Barings," as well as "President of Barings BDC."  Together with London-based Adam Wheeler, Fowler headed the Global Private Finance group.  During his employment with Barings, Fowler signed an agreement that contains restrictions on the solicitation of the company's employees and clients and the use and disclosure of its confidential

---

[1] For technical reasons, Barings had to file its amended complaint twice in the county's electronic-filing system.  The Court deems this to be a single amendment, not two amendments as Corinthia, Fowler, and Tucker contend.

information. The agreement also requires him to return Barings's property and confidential information at the end of his employment. (Am. Compl. ¶¶ 12, 25, 26.)

6. Tucker was once Barings's Global Head of Operations. She left the company in January 2023. At that time, she signed a separation agreement barring her from competing against Barings for six months and from soliciting its employees for twelve months. During her employment, Tucker had also agreed to confidentiality restrictions equivalent to Fowler's. (*See* Am. Compl. ¶¶ 13, 29.)

7. As early as August 2023, Corinthia began quietly recruiting the members of Barings's Global Private Finance group. Corinthia, which is based in the United Kingdom, had no business at that time. As alleged, it aimed to accelerate its entry into the market by luring away Barings's employees and clients. In October and November 2023, Corinthia offered to match the salaries that Barings paid its Global Private Finance group. By December 2023, Corinthia had collected postdated resignation letters from the departing employees. Three months later, Fowler, Wheeler, and twenty other members of the Global Private Finance group delivered those letters to Barings and resigned to join Corinthia. (*See* Am. Compl. ¶¶ 35, 37, 39, 41, 42.)

8. According to Barings, the departing employees delayed their resignations for two reasons: to collect cash bonuses earned for 2023 and to gather confidential information to take with them. As alleged, Corinthia urged the departing employees to gather "confidential information concerning Barings' benefit plans, compensation structure, and new client intake and onboarding forms and policies." In the days

leading up to their departure, some of the London-based employees allegedly made unusual requests for confidential "policies and documents" and were filmed "leaving the Barings office carrying stuffed duffel bags and unusually large stacks of papers and files." (Am. Compl. ¶¶ 42–45, 48.)

9. On the morning after the resignations, Corinthia's founder, Paul Weightman, approached the chairman of Barings's parent company with an unsolicited term sheet containing confidential information allegedly obtained from the departing employees. In short, the term sheet proposed that Corinthia would buy the Global Private Finance group's portfolio on the cheap and offer employment to the group's remaining employees. Meanwhile, Corinthia continued recruiting: as Tucker allegedly told one of Barings's managing directors, "we are going after everyone." (Am. Compl. ¶¶ 53–55.)

10. Days later, Barings began this lawsuit and moved for emergency injunctive relief and expedited discovery. The parties resolved that emergency motion by consent, tendering a stipulated injunction order. The Court entered the order, which required, among other things, that Corinthia return Barings's confidential information, secure certifications from all departing employees before they commenced their employment, and refrain from onboarding the departing foreign employees until any valid noncompetition restrictions expired. Following the entry of the stipulated injunction order, Corinthia returned over 100 documents containing Barings's confidential information. Even so, Barings alleges that Corinthia has not

complied with all of the parties' agreed terms. (Am. Compl. ¶¶ 63–68, 147; Stipulated Inj. Order, ECF No. 44.)

11. In its amended complaint, Barings alleges that Corinthia, Fowler, and Tucker conspired to cripple its Global Private Finance group and misappropriate its confidential information and trade secrets. The amended complaint includes nine[2] claims for relief: breach of contract (against Fowler and Tucker); constructive fraud and breach of fiduciary duty (against only Fowler); breach of the stipulated injunction order (against only Corinthia); and tortious interference with contract, misappropriation of trade secrets, unfair or deceptive trade practices under N.C.G.S. § 75-1.1, civil conspiracy, and a remedial request for permanent injunctive relief (against Corinthia, Fowler, and Tucker).

12. Corinthia, Fowler, and Tucker separately moved to dismiss all claims in the amended complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (*See* ECF Nos. 83, 88, 93.) The Court held a hearing on 28 October 2024. The motions have been fully briefed and are ripe for decision.

## II.
## LEGAL STANDARD

13. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts

---

[2] Barings voluntarily dismissed a tenth claim for tortious interference with prospective economic advantage. (*See* ECF No. 125.)

sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).

## III.
## ANALYSIS

14. Before turning to the parties' arguments, the Court notes that the amended complaint claims not only that Corinthia, Fowler, and Tucker individually engaged in wrongful acts but also that they conspired together to carry out their tortious conduct. At the hearing, Barings retreated from its position that Fowler and Tucker had personally committed at least some of the alleged torts and related wrongs, instead falling back on conspiracy as its primary theory of liability. But Barings has not clearly delineated which theory or theories it means to pursue for which claim. Nor has it voluntarily dismissed the disputed claims. Accordingly, the Court must address the sufficiency of the allegations of personal wrongdoing as well as the allegations of conspiracy.

### A. Breach of Contract

15. In its first claim for relief, Barings asserts that Fowler breached contractual provisions that prohibit him from disclosing its confidential information and that require him to return its property at the end of his employment. Barings also claims

that Tucker breached similar provisions, as well as a covenant not to solicit its employees for one year after her departure.

16. To state a claim for breach of contract, a plaintiff need only allege the "existence of a valid contract" and a "breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26 (2000). Even so, conclusory allegations of a breach will not do. The complaint must allege enough to put the presiding court and the defendant on notice of the events giving rise to the claim—that is, the facts that constitute the breach. *See RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 675 (1977); *see also, e.g., VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510 (2004) (discussing the insufficiency of conclusory allegations of breach of nondisclosure provision in the context of a motion for preliminary injunction).

17. Barings's claim does not satisfy this modest standard. The allegations that Fowler and Tucker breached their employment agreements are conclusory, lacking factual support. Barings names many generic categories of business and financial information that it considers confidential. (*See* Am. Compl. ¶ 22.) But its conclusory allegations of breach leave the individual defendants to guess at what they supposedly took, disclosed, or failed to return. (*See* Am. Compl. ¶¶ 34, 76, 78.) Such sweeping, generalized allegations do not give Fowler and Tucker "notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8(a)(1).

18. Nor does the amended complaint allege facts to show that Tucker breached her nonsolicitation covenant. The only nonconclusory allegation to show solicitation

by Tucker relates to events in March 2024, several months *after* her nonsolicitation restriction had expired.  (*See* Am. Compl. ¶¶ 29, 55.)

19.    Accordingly, the Court grants Fowler's and Tucker's motions to dismiss the claims against them for breach of contract.

## B.   Misappropriation of Trade Secrets

20.    Barings claims that Corinthia, Fowler, and Tucker misappropriated its trade secrets.  As alleged, these trade secrets include plans for new products, employee compensation information, and various internal policies.

21.    To start, Corinthia argues that English law, not North Carolina law, governs this claim.  For a claim of misappropriation of trade secrets, "the proper choice of law rule . . . is the *lex loci* test."  *SciGrip, Inc. v. Osae*, 373 N.C. 409, 420 (2020).  Under this test, the law that applies is the law of the place "where the injury or harm was sustained or suffered"—usually, the place "where the last event necessary to make the actor liable or the last event required to constitute the tort takes place."  *Id.* (quoting *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 695 (2010)).

22.    As Corinthia sees things, the last event constituting the alleged misappropriation is its use of the trade secrets, which must have occurred in England where it is located.  The Court disagrees.  The amended complaint alleges not only that Barings's principal place of business is in North Carolina but also that North Carolina is where its injuries occurred, where its Global Private Finance group is primarily based, and where Corinthia solicited certain employees.  In addition, the amended complaint alleges that "Corinthia transacts business in North Carolina by

providing or planning or organizing to provide portfolio services in Charlotte, North Carolina with the team improperly hired from Barings that gives rise to this action." (Am. Compl. ¶¶ 11, 14, 15.) These allegations could support an inference that the last event giving rise to the claim occurred in North Carolina, which was not true in the case law on which Corinthia relies. *See Elior, Inc. v. Thomas*, 2024 NCBC LEXIS 61, at *43 (N.C. Super. Ct. Apr. 22, 2024) ("But the Complaint fails to allege any fact that would support an inference that the last act giving rise to the injury occurred anywhere other than in Illinois.").

23.     Thus, for now, the Court assumes without deciding that North Carolina law applies. Corinthia is free to renew its choice-of-law argument on a more developed record at summary judgment.

24.     To plead a claim for misappropriation under North Carolina law, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Krawiec v. Manly*, 370 N.C. 602, 609 (2018) (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 326 (2008)). A "trade secret" is "business or technical information" that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use" and is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3). "Misappropriation" is the "acquisition, disclosure, or use of a

trade secret of another without express or implied authority or consent," excluding independent development and other legitimate activities. *Id.* § 66-152(1).

25. Barings identifies the trade secrets at issue as "plans for new investment products," "valuation and risk management policies," short-term and long-term "compensation information," and "responses to investor due diligence questionnaires." (Am. Compl. ¶ 46.) Each trade secret was allegedly among the documents "returned by Corinthia pursuant to" the stipulated injunction order at the outset of the case. (Am. Compl. ¶ 46.) These descriptions are not vague or conclusory, as Corinthia contends. They identify with specificity what Corinthia is accused of misappropriating—namely, distinct groups of information contained within a defined set of documents. Accordingly, the Court concludes that Barings has identified its alleged trade secrets with sufficient particularity. *See, e.g., Inhold, LLC v. PureShield, Inc.*, 2020 NCBC LEXIS 107, at *9 (N.C. Super. Ct. Sept. 22, 2020) ("The descriptions are reasonably definite without disclosing the actual secrets.").[3]

26. Corinthia insists that this information is too generic or too widely known to deserve trade-secret protection. Perhaps discovery will yield support for Corinthia's factual assertions, but they "are not found in the amended complaint" and therefore

---

[3] In paragraph 22 of its amended complaint, Barings alleges that it keeps a slew of other types of information confidential, including "client lists, contact information and information regarding products or services," as well as "operating methods, business processes, services, products, pricing, fees, costs, service performance, operating results, models, strategic planning, fund details, and governing information." (Am. Compl. ¶ 22.) At no point, though, does the amended complaint identify these broad categories of information as trade secrets. Nor does Barings's opposition brief cite paragraph 22 to support its trade-secret claim. And for good reason: our courts have repeatedly dismissed trade-secret claims based on such "extremely general" allegations. *Krawiec*, 370 N.C. at 611; *see also Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at *9 n.3 (N.C. Super. Ct. May 1, 2024) (collecting cases).

cannot serve as a basis for dismissal. *TriBike Transp., LLC v. Essick*, 2022 NCBC LEXIS 143, at *6 (N.C. Super. Ct. Nov. 30, 2022).

27.     The rest of Corinthia's arguments—that Barings has not alleged any acts of misappropriation or any resulting harm—are also meritless.  Taken as true, the allegations show that Corinthia possessed Barings's trade secrets without its consent, used that information to establish itself in the marketplace, and returned the information only after this litigation began.  (*See, e.g.*, Am. Compl. ¶¶ 46, 50.)  That is sufficient to plead both misappropriation and resulting harm.  *See, e.g.*, *TriBike*, 2022 NCBC LEXIS 143, at *7; *Mech. Sys. & Servs., Inc. v. Howard*, 2021 NCBC LEXIS 69, at *7 (N.C. Super. Ct. Aug. 11, 2021); *see also Barr-Mullin, Inc. v. Browning*, 108 N.C. App. 590, 597 (1993) ("The very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects."); *Next Advisor, Inc. v. LendingTree, Inc.*, 2016 NCBC LEXIS 189, at *26 (N.C. Super. Ct. June 29, 2016) ("[I]n most instances, courts presume irreparable harm where a trade secret has been misappropriated." (citation and quotation marks omitted)).

28.     The allegations against Fowler and Tucker are deficient, however.  As Fowler and Tucker correctly observe, the amended complaint alleges in conclusory fashion that they "disclos[ed] Confidential Information to Corinthia."  (Am. Compl. ¶¶ 76, 78.)  There are no allegations that they improperly acquired, used, or disclosed any trade secrets.  Rather, Barings concedes that it does not know "how or when" Corinthia received the alleged trade secrets.  (Am. Compl. ¶ 64.)  Barings offers no response to this argument in its opposition brief.  The Court therefore concludes that

Barings has not adequately stated a claim for misappropriation of trade secrets against Fowler and Tucker. *See, e.g.*, *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 2018 NCBC LEXIS 42, at *38–39 (N.C. Super. Ct. May 8, 2018) (dismissing claim when plaintiff had not alleged that defendant "accessed or acquired trade secrets at any time when she was not authorized to do so" or that defendant "disclosed or used" trade secrets), *aff'd per curiam*, 372 N.C. 260 (2019).

29. Accordingly, the Court dismisses the claims for misappropriation of trade secrets against Fowler and Tucker but denies Corinthia's motion to dismiss that claim.

## C. Tortious Interference with Contract

30. Next, the Court considers Barings's claim for tortious interference with contract. The basis for the claim is that Corinthia, Fowler, and Tucker induced the departing employees to breach their employment agreements with Barings by misusing its confidential information and soliciting its customers.

31. To state a claim for tortious interference with contract, the plaintiff must allege that a valid contract exists between it and a third person and that the defendant knew of the contract, intentionally induced the third person not to perform the contract, did so without justification, and caused actual damage. *See Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498 (1992). Inducement generally requires "purposeful conduct." *E.g.*, *Truist Fin. Corp. v. Rocco*, 2024 NCBC LEXIS 62, at *38 (N.C. Super. Ct. Apr. 25, 2024); *Gallaher v. Ciszek*, 2020 NCBC LEXIS 124, at *16 (N.C. Super. Ct. Oct. 16, 2020).

32. Corinthia argues that any interference was justifiable market competition. But competition is an accepted justification for interference in another's business relations only when carried out "by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988). Here, Barings has adequately alleged that Corinthia misappropriated its trade secrets, which "is not a lawful means of competition." *New Restoration and Recovery Servs., LLC v. Dragonfly Pond Works, LLC*, 2023 NCBC LEXIS 80, at *17 (N.C. Super. Ct. June 15, 2023); *see also McGriff Ins. Servs. v. Hudson*, 2023 NCBC LEXIS 4, at *52 (N.C. Super. Ct. Jan. 17, 2023) (same); *Mech. Sys.*, 2021 NCBC LEXIS 69, at *13 (same).

33. In addition, Corinthia argues that it did not know about the departing employees' agreements, induce them to breach the agreements, or cause any actual harm to Barings. The amended complaint alleges, however, that Corinthia obtained and held signed resignation letters months before the departing employees left Barings; that confidentiality and nonsolicitation restrictions are "common conditions of employment" in the industry; that Corinthia purported to condition each "employee's start date on the expiration of any applicable restriction"; that Corinthia "sought and obtained confidential information" from these employees; that certain employees took "unusually large stacks of papers and files"; that Corinthia returned at least "130 documents containing Barings-related information," including trade secrets, under the stipulated injunction order; and that the departing employees "arranged calls and meetings with Barings Clients, potential clients, and partners for the weeks after their planned resignation." (Am. Compl. ¶¶ 32, 33, 41, 42, 45, 46, 48,

56.) These allegations, if true, could support an inference that Corinthia knew of the employee agreements, induced the departing employees to breach the agreements, and caused Barings harm by doing so. *See, e.g.*, *Truist*, 2024 NCBC LEXIS 62, at *38 (concluding that an allegation that defendant directed departing employees to disclose confidential information was sufficient to plead "active and intentional conduct").

34. On the other hand, the allegations as to Fowler and Tucker are again deficient. "Conclusory allegations that merely state that a defendant has 'induced' or 'caused' a third party to breach a contract with a plaintiff . . . are insufficient to satisfy the inducement element." *Id.* at *38–39. At no point does the amended complaint allege, in anything other than conclusory terms, that Fowler and Tucker personally induced any employee to breach a contract with Barings. *See, e.g.*, *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at *28 (N.C. Super. Ct. Mar. 21, 2023); *Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at *29 (N.C. Super. Ct. Aug. 20, 2019).

35. Accordingly, the Court dismisses the claim for tortious interference with contract against Fowler and Tucker but denies Corinthia's motion to dismiss that claim.

## D. Section 75-1.1

36. Barings's claim for unfair or deceptive trade practices under section 75-1.1 is predicated on its underlying allegations of misappropriation of trade secrets and tortious interference with contract. Because these predicate claims survive against

Corinthia, so too does the section 75-1.1 claim against it. But having dismissed the predicate claims against Fowler and Tucker, the Court dismisses the section 75-1.1 claim against them for the same reasons.

### E. Civil Conspiracy

37. Barings's claim for civil conspiracy is also predicated on its underlying allegations of misappropriation of trade secrets and tortious interference with contract. In essence, Barings alleges that Corinthia, Fowler, and Tucker conspired to commit these torts and are therefore liable even if each conspirator did not personally perform each wrongful act.

38. "A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, rather than the conspiracy itself." *Krawiec*, 370 N.C. at 613 (quoting *Burton v. Dixon*, 259 N.C. 473, 476 (1963)). In other words, "[o]nly where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement." *Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002). Thus, "a complaint sufficiently states a claim for civil conspiracy when it alleges (1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." *Krawiec*, 370 N.C. at 614 (citation and quotation marks omitted). Because these elements "are broadly stated," the burden in seeking to dismiss a conspiracy claim "is difficult" to

meet. *Safety Test & Equip Co. v. Am. Safety Util. Corp.*, 2015 NCBC LEXIS 40, at *48 (N.C. Super. Ct. Apr. 23, 2015).

39. Corinthia, Fowler, and Tucker argue that the conspiracy claim must be dismissed if the underlying tort claims against them are dismissed. As discussed, though, the amended complaint adequately states claims against Corinthia for trade-secret misappropriation and tortious interference. These claims provide suitable predicates for the conspiracy claim. This is so even though the Court has dismissed the same claims against Fowler and Tucker. So long as Barings can show an agreement among the three to carry out the misconduct, "all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement." *Neugent v. Beroth Oil Co.*, 149 N.C. App. 38, 53 (2002) (citation and quotation marks omitted); *see also Chisum v. MacDonald*, 2018 NCBC LEXIS 34, at *32 (N.C. Super. Ct. Apr. 18, 2018) ("The dismissal of the claims against Hardison for breach of fiduciary duty and professional negligence does not bar him from liability for damages resulting from the other conspirators' acts.").

40. And although Corinthia and Tucker (but not Fowler) argue that the amended complaint does not adequately allege the existence of such an agreement, the Court disagrees. Taken as true, the allegations show that Corinthia, Fowler, and Tucker "entered into a knowing agreement among each other to commit the torts," "the conspiracy occurred from at least August 2023 through March 2024," and the purpose of the conspiracy was to accelerate the launch of Corinthia's business by raiding Barings's employees and confidential information. (*E.g.*, Am. Compl. ¶¶ 5,

45, 51, 60, 126, 128.) These allegations are supported by other allegations tending to show that Fowler coordinated his resignation with more than twenty employees and that Tucker actively recruited members of the Global Private Finance group while identifying to Corinthia some of the confidential information that they might possess. (*See, e.g.*, Am. Compl. ¶¶ 41, 44, 47–49, 55.)

41. To be clear, the conspiracy allegations are neither particularized nor comprehensive. And this Court has cautioned that "[a] conspiracy claim should not be used to mask the weakness of underlying claims on which the conspiracy allegations are based." *Safety Test & Equip.*, 2015 NCBC LEXIS 40, at *48. "At the same time, the Court must fairly apply the liberal standards that govern motions to dismiss." *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *69 (N.C. Super. Ct. Jan. 18, 2012). Under these liberal standards, the amended complaint adequately alleges the elements of a conspiracy. *See, e.g.*, *TriBike*, 2022 NCBC LEXIS 143, at *15–16 ("The amended complaint alleges the identity of the conspirators, the timeframe of the conspiracy, and its purpose."); *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 111, at *17–18 (N.C. Super. Ct. Sept. 28, 2020) ("Taking these allegations as true, New JBL has set forth not only that Osprey entered into an agreement but also roughly when the agreement happened, how it arose, and its purpose.").

42. Accordingly, the Court denies the motions to dismiss the conspiracy claim.

### F. Constructive Fraud & Breach of Fiduciary Duty

43. Barings asserts claims against Fowler for constructive fraud and breach of fiduciary duty, both of which are based on the same allegations. According to Barings, Fowler was one of its officers and managing directors. He allegedly breached his fiduciary duties for his own benefit by helping Corinthia to raid Barings's Global Private Finance group, all while concealing this from the company for months.

44. Because Barings is a Delaware LLC, these claims are governed by Delaware law under the internal affairs doctrine. *See, e.g., JS Real Estate Invs. LLC v. Gee Real Estate, LLC*, 2017 NCBC LEXIS 104, at *15 (N.C. Super. Ct. Nov. 9, 2017); *Worley v. Moore*, 2017 NCBC LEXIS 15, at *67 (N.C. Super. Ct. Feb. 28, 2017). In seeking to dismiss these claims, Fowler cites only North Carolina law. The Court may deny his motion for this reason alone.[4]

45. In any event, Fowler's arguments either misread or ignore the allegations in the amended complaint. He contends that he was not an officer and director of Barings and therefore did not owe it fiduciary duties, that his actions comprised only lawful preparations to compete, and that he received no personal benefit from these actions. But the amended complaint expressly alleges that "Fowler was an officer and managing director of Barings," (Am. Compl. ¶¶ 12, 103), conspired with

---

[4] Fowler argues that this claim is barred by the economic loss rule but cites no Delaware law in support. Nor does he explain why North Carolina's economic loss rule ought to apply to the alleged breach of fiduciary duty. Given the lack of any legal basis for this argument, the Court declines to address it. Fowler and Tucker also argue that the economic loss rule bars the tortious interference claims; however, because those claims have been dismissed, the Court need not address the argument. Neither Fowler nor Tucker appears to argue that this doctrine bars the claim for misappropriation of trade secrets or any other claim based on the alleged misappropriation.

Corinthia to carry out an unlawful scheme and concealed it from Barings, (*see* Am. Compl. ¶¶ 49, 56, 100, 101), and received financial benefits, (*see* Am. Compl. ¶¶ 44, 51). Viewing the allegations in the light most favorable to Barings, the alleged facts could give rise to an inference that Fowler's actions went beyond mere preparations to compete and contravened his duties of good faith and loyalty. *Cf. RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at *26 (N.C. Super. Ct. Feb. 18, 2016) (noting that, under North Carolina law, a "conspiracy to bring about mass resignation of an employer's key employees" and "usurpation of employer's business opportunity" go beyond mere preparations to compete).

46. Accordingly, the Court denies Fowler's motion to dismiss the claims for constructive fraud and breach of fiduciary duty.

## G. Motion for Permanent Injunction

47. Injunctions are remedies, not independent causes of action. The Court therefore grants the motions to dismiss the purported standalone claim for permanent injunction. That said, Barings may be able to seek an injunction as a remedy if it prevails on one or more claims. Thus, the dismissal is without prejudice to Barings's ability to move for a permanent injunction as a remedy at the appropriate time. *See, e.g.*, *Al-Hassan v. Salloum*, 2020 NCBC LEXIS 22, at *8–9 (N.C. Super. Ct. Feb. 20, 2020) (dismissing "claim for permanent injunction").

## H. Breach of Stipulated Injunction Order

48. According to Barings, the stipulated injunction order is not only a court order but also a valid contract between the parties. Corinthia does not dispute that

premise, arguing instead that the claim for breach of the stipulated injunction order must be dismissed for two reasons: first, because dismissal of all other claims against Corinthia would necessitate the termination of the stipulated injunction order; and second, because Barings has not alleged any damages. Neither argument has merit. The Court has not dismissed all claims against Corinthia, and "[u]nder North Carolina law, proof of damages is not an element of a claim for breach of contract." *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 NCBC LEXIS 46, at \*127 (N.C. Super. Ct. Aug. 8, 2019). Accordingly, the Court denies Corinthia's motion to dismiss this claim.

## IV.
## CONCLUSION

49. For these reasons, the Court **GRANTS in part** and **DENIES in part** the motions to dismiss as follows:

   a. The Court **DISMISSES** with prejudice[5] the claims against Fowler and Tucker for breach of contract, tortious interference with contractual relations, misappropriation of trade secrets, and unfair or deceptive trade practices under section 75-1.1.

   b. The Court **DISMISSES** the remedial claim for permanent injunction without prejudice to Barings's ability to move for a permanent injunction as a remedy at the appropriate time.

---

[5] Dismissal with or without prejudice is in the Court's discretion. *See First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013). Here, Barings has already amended its complaint and has thus had the chance to cure these pleading deficiencies.

c. The Court **DENIES** the motions as to the claim against Corinthia, Fowler, and Tucker for civil conspiracy; as to the claims against Fowler for constructive fraud and breach of fiduciary duty; and as to the claims against Corinthia for misappropriation of trade secrets, tortious interference with contractual relationships, unfair or deceptive trade practices under section 75-1.1, and breach of the stipulated injunction order.

**SO ORDERED**, this the 13th day of February, 2025.

      /s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases